UNITED STATES of America,
Appellee, Cross–Appellant,

v.

Wanphen BOONPHAKDEE and Alba Lopez–Velasquez, Defendants,

Juan Eduardo Milian, Carlos M. Francisco, also known as "Frank" and Jorge Rodriguez, Defendants–Appellants,

Carlos M. Francisco, Defendant–Appellant, Cross–Appellee.

Nos. 067, 669, 068 and 166, Dockets 93–1718, 93–1735, 93–1743 and 93–1820.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1994.

Decided Nov. 3, 1994.

David H. Weiss, New York City, for defendant-appellant Juan Eduardo Milian.

Lynne F. Stewart, New York City, for defendant-appellant and cross-appellee Carlos M. Francisco.

Steven M. Bernstein, New York City, for defendant-appellant Jorge Rodriguez.

John F. Curran, Jr., Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D., NY, Peter A. Norling, Asst. U.S. Atty., of counsel), for appellee and cross-appellant.

Before: OAKES, ALTIMARI and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Appellants Juan Eduardo Milian, Carlos M. Francisco and Jorge Rodriguez appeal from judgments of conviction entered in the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *Judge* ). Their appeal presents the question whether the district judge gave adequate

emphasis to the defense theory in the jury charge. Because the district court included the defense theory in its jury charge, and because we find that appellants' other objections are without merit, we affirm the convictions.

The government appeals the sentence imposed on Francisco, arguing that the district court erred in finding that Francisco was not a "career offender" under U.S.S.G. § 4B1.1. This cross-appeal presents the question whether an arrest made after the commission of one prior felony and before the commission of another automatically renders the sentences imposed for those prior offenses "unrelated," thereby requiring Francisco to be sentenced as a career offender under the Sentencing Guidelines. Because we answer the question in the affirmative, we remand to the district court for resentencing under the career offender provision.

## BACKGROUND

The Drug Enforcement Administration (DEA) began investigating defendant Boonphakdee[1] in May 1991. That month, Boonphakdee asked Hoang Ky Ly, an undercover DEA special agent in Bangkok, to transport heroin to the United States. In early July 1992, Boonphakdee provided approximately 1.7 kilograms of heroin to an informant working with Ly for transport from Thailand to New York. On July 13, 1992, Ly flew to Chicago and took custody of the heroin that had been transported from Bangkok by the informant working with Ly. Defendant Lopez was the intended recipient of the heroin, but Boonphakdee, after she arrived in Indiana at the home of her sister, advised Ly that Lopez would not travel from Miami to New York to pick up the heroin. Rather, an unidentified male would go in her place. Boonphakdee also informed Ly that she (Boonphakdee) would travel to Miami to meet with Lopez.

On July 15, 1992, Ly called Lopez in Miami and spoke with her and Boonphakdee. Lopez informed Ly that "Jorge" (Rodriguez) would go to New York in her place. The same day, Ly called Rodriguez at his mobile

telephone number and Francisco answered. Francisco told Ly that both he and Rodriguez would go to New York the following day. These defendants told Ly that they did not have enough money to purchase all the heroin at once, but that they had already contacted the ultimate purchasers in New York. The following day Boonphakdee told Ly that Rodriguez did not have money to buy the heroin, but that she would still go to New York and attempt to find another purchaser. She asked Ly nevertheless to call Rodriguez to see if he had managed to get any money for the heroin.

Ly then called Rodriguez's mobile telephone, and Francisco answered again. Ly asked whether Francisco and Rodriguez wanted to deal with him directly. Francisco responded that he would be willing to do so.

On the night of July 16, 1992, Ly and another undercover agent met Boonphakdee, Rodriguez and Francisco at John F. Kennedy International Airport as the latter three deboarded a plane from Miami. Milian, who was the New York drug contact for Rodriguez and Francisco, was also present. Milian stated that he needed a one-gram sample to show to a customer, who would initially be willing to purchase 125 grams of the heroin. Milian stated also that if his customer liked the heroin, the customer would purchase the entire 1.7 kilograms. After following Ly to an undercover vehicle and upon seeing the heroin, Milian commented on its high quality. After Rodriguez and Francisco also looked at the heroin, the three appellants were arrested.

At a trial that began on March 8, 1993, the government sought to prove that Rodriguez, Francisco and Milian conspired to distribute and attempted to possess with intent to distribute 1.7 kilograms of heroin. The defendants, on the other hand, contended that they had no intention of distributing heroin, but rather, only sought to "rip off" unnamed prospective purchasers of the heroin by robbing them at gunpoint. Rodriguez testified that a one-gram sample of heroin was to be used as bait to attract drug dealers interested in purchasing the rest of the heroin; he testified that he, Francisco and Milian would

---

1. Boonphakdee and defendant Lopez pled guilty

and do not, of course, appeal their convictions.

carry out their robbery scheme by tying up the ultimate buyer, leaving the heroin at the scene of the robbery, and calling the police.

At the charging conference, defense counsel jointly requested that Judge Nickerson present the defense theory in its jury charge. The judge agreed to charge the jury on the defense theory, although he rejected the precise language defense counsel requested. The court included the defense theory in its instruction on intent:

The defendants maintain that they are not guilty in this case because they never formed the requisite intent. They claim that their intent was to steal the money at the time of the transaction, and that at no time did they intend to possess or to distribute the heroin in this case.

The court included an additional instruction:

The government does not have to prove that the person possessed any specific quantity of the controlled substance charged in the indictment. It is sufficient if the government proves beyond a reasonable doubt that he knowingly and intentionally possessed any amount of the controlled substance charged.

. . . .

. . . . The government must [prove] beyond a reasonable doubt that a defendant had the specific intent that the substance be distributed.

Defense counsel asked the court to instruct that "[i]f you find that the defendant[s'] intent was to steal the money, not to distribute drugs, then you must acquit." The court declined to give this instruction. Defense counsel also jointly requested an instruction on a lesser-included offense and special interrogatories regarding the amount of heroin appellants intended to distribute, if any; and counsel for Rodriguez requested a multiple conspiracies instruction. The court denied these requests as well.

## DISCUSSION

I. The Convictions

A.

■ A criminal defendant has a right to a jury charge that reflects the defense theory.

*United States v. Durham,* 825 F.2d 716, 718 (2d Cir.1987). Appellants argue that the jury charge did not give adequate emphasis to the defense theory that the defendants sought only to rob the prospective drug purchasers, rather than distribute the heroin to them. According to appellants, the court's sole reference to the defense theory did not adequately inform the jury that it must acquit if, notwithstanding Rodriguez's admission about the defendants' intent to distribute the one gram sample, the jury found that the defendants did not intend to distribute the rest of the heroin.

■ Viewing the jury charge in light of the evidence presented at trial, we cannot find that appellants were unduly prejudiced by the charge given. Appellants contend that the district judge erred by not giving the precise instruction they requested. But defendants are "not necessarily entitled to have the exact language of the charge they submitted to the district court read to the jury." *Durham,* 825 F.2d at 719 (citing *United States v. Dyman,* 739 F.2d 762, 771 (2d Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 969, 83 L.Ed.2d 973 (1985)); *see also United States v. Imran,* 964 F.2d 1313, 1317 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 626, 121 L.Ed.2d 558 (1992). Here the instructions given adequately presented the defense theory. The district judge's instruction informed the jury of the defendants' theory that they did not intend to possess or distribute heroin; and he followed this instruction with another which informed the jury that it must find an intent to distribute the controlled substance in order to convict. It was not error, therefore, to reject the precise language requested. Moreover, as Judge Nickerson reasoned, the defendants' proposed jury instruction—"[i]f you find that the defendant[s'] intent was to steal the money, not to distribute drugs, then you must acquit"—could have misled the jury. Indeed, the instruction might have suggested to the jury that an intent to rob and an intent to distribute heroin were mutually exclusive, while the evidence could have supported a finding that the defendants intended to do both.

■ It would have been proper for the jury to convict appellants on a finding that appellants intended to distribute only one gram of heroin. *See United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir.) ("Section 841(a) of Title 21 prohibits the distribution of *any* amount of cocaine and in no way requires proof of a particular quantity of narcotics as an element of the conspiracy to distribute."), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). Hence, the jury instructions were entirely appropriate. If appellants intended to distribute the one gram, as Rodriguez testified at trial, their ultimate purpose—whether to rob drug dealers or to distribute additional amounts— would be irrelevant for purposes of the jury verdict. Because the amount of heroin is not an element of the offense, appellants' argument that it was improper for the jury to convict on the basis of evidence of an intent to distribute the one gram is erroneous as a matter of law. *See United States v. Patino*, 962 F.2d 263, 266 (2d Cir.) ("[A]n impermissible alteration of the charge must affect an *essential element of the offense*, and we have consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial.") (emphasis added) (internal quotation marks and citations omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 354, 121 L.Ed.2d 268 (1992).

In this case the indictment gave appellants clear notice of what the government attempted to prove at trial—a conspiracy to distribute 1.7 kilograms of heroin.[2] In fact, it was appellants themselves—through the testimony of Rodriguez—who introduced the theory of an intent to distribute only one gram. Appellants are thus in no position to complain that this alternative basis for liability unfairly surprised them.

Appellants mistakenly rely on *Durham, supra.* In that case, the government sought to prove that the defendants intended to commit arson. The defendants presented testimony suggesting that they sought only to "rip off" government agents by agreeing

to commit arson. On those facts, we reversed because the district court did not instruct the jury on the defense theory of the defendants' intent. *See* 825 F.2d at 719–20. Here, by contrast, the district court *did* instruct the jury on defendants' theory of their intent to rob and then explicitly stated that the jury must find defendants had a specific intent to distribute a controlled substance in order to convict them. Indeed, in giving these instructions, the district court followed the teaching of *Durham*.

### B.

■ Appellants' other objections are similarly without merit. Their request for a lesser-included-offense instruction was properly denied. As noted above, and as counsel for Francisco conceded at oral argument, the *amount* of heroin the defendants intended to distribute is not relevant for purposes of the jury verdict—it is not an element of the offenses of which the defendants were convicted. *See Campuzano*, 905 F.2d at 679. A lesser-included-offense instruction was not necessary or appropriate in these circumstances because, as a matter of law, what appellants consider to be a lesser offense— intent to distribute a smaller amount of heroin—is the same offense as that charged. *See Schmuck v. United States*, 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (adopting "elements approach" whereby offense is lesser-included offense only if its elements are a subset of the statutory elements of the charged offense). In fact, the amount of heroin involved only becomes relevant at the penalty or sentencing stage. *See, e.g.*, 21 U.S.C. § 841(b) (pegging severity of penalty to various factors, including amount and type of controlled substance).

■ Appellants next argue that the court erred in refusing to submit to the jury special interrogatories regarding the quantity of controlled substances they intended to distribute. Again, because the amount of heroin is relevant only for purposes of sentenc-

---

2. At an initial sentencing hearing on September 24, 1993, the district court found that more than one kilogram of heroin was involved in the offenses of which appellants were convicted. The

district court held a second sentencing hearing on October 15, 1993, however, and found appellants reasonably anticipated purchasing only 125 grams of heroin.

ing, the district judge's refusal to submit special interrogatories on the subject of quantity cannot be considered an abuse of discretion. *See United States v. Madkour,* 930 F.2d 234, 237 (2d Cir.) ("[Q]uantity relates solely to sentencing. And at sentencing the district court is not limited to conclusions reached by the jury or even evidence presented at trial, but instead may consider any evidence that it deems appropriate."), *cert. denied,* —— U.S. ——, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991).

■ Finally, the district judge did not err in declining to instruct the jury on multiple conspiracies. The government presented evidence to support its claim that the defendants intended to distribute heroin. In response, the defense argued that the defendants intended only to rob the prospective drug purchasers, rather than distribute the heroin. By instructing the jury as the district court did here—that "[t]he defendants maintain that they are not guilty in this case because they never formed the requisite intent[;] [t]hey claim that their intent was to steal the money at the time of the transaction[ ]"—the district court captured the essence of the defense theory, whether it was one of a different intent or a different conspiracy. Put another way, this instruction on intent served the purposes of a separate conspiracy instruction because it clearly and adequately placed the defense theory before the jury.[3]

## II. The Government's Cross–Appeal

In its cross-appeal, the government argues that the district judge erred in deciding that Francisco was not a "career offender" under U.S.S.G. § 4B1.1. We agree.

■ Because the question whether Francisco was a career offender involves inter-

preting the Sentencing Guidelines, we review it *de novo. See United States v. Lopez,* 961 F.2d 384, 386 (2d Cir.1992). Section 4B1.1 applies where "(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least *two prior felony convictions* of either a crime of violence or a controlled substance offense." (emphasis added). At the time he was sentenced for the offenses that are the subject of this appeal, Francisco had committed two other, earlier felony offenses. First, he was arrested on September 16, 1983, for trafficking in marijuana, possession of cocaine and possession of a firearm. Second, while out on bail pending trial on those charges, Francisco shot and killed someone. He later pled guilty in a Florida court to one count of marijuana trafficking and one count of manslaughter and was sentenced on March 25, 1985, to three years incarceration on each of the convictions, with the sentences to run concurrently.

■ Based on these facts, the Presentence Report prepared for Judge Nickerson by the United States Probation Office classified Francisco as a career offender. Francisco objected, contending that because his two prior offenses were both factually related[4] and consolidated for sentencing, they could not be considered "two prior felony convictions" under § 4B1.1. Judge Nickerson agreed, and the government appealed.

Resolution of this issue requires tracing a rather tortuous path through the Sentencing Guidelines. A defendant has two prior felony convictions for purposes of § 4B1.1 if the sentences for them are "counted separately." U.S.S.G. § 4B1.2(3). Prior sentences are "counted separately" if they were imposed in

---

**3.** For their parts, appellants might have helped their cause had they submitted a specific jury charge on multiple conspiracies, as permitted by the Federal Rules of Criminal Procedure. *See* Fed.R.Crim.P. 30 ("[A]ny party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to all parties."). A failure to do so unavoidably makes it more difficult for a reviewing court to look with favor upon their claim on appeal.

**4.** At sentencing on September 24 and October 15, 1993, Francisco argued that his two prior offenses were factually related because the September 22, 1983, manslaughter offense stemmed from a dispute that arose after the drug deal for which Francisco was arrested on September 16, 1983, went bad.

"unrelated cases." U.S.S.G. § 4A1.2(a)(2). According to the commentary on this latter provision,[5] prior sentences are "not considered related" (*i.e.*, they were imposed in "unrelated cases")

> if they were for offenses that were separated by *an intervening arrest* (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). *Otherwise*, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

Application Note 3 (emphasis added).

Applying this language to the facts before us, the result is clear. Prior to being sentenced by Judge Nickerson, Francisco had committed two prior offenses—marijuana trafficking and manslaughter—separated by an intervening arrest: while on bail for the marijuana offense, Francisco committed the manslaughter offense. According to Application Note 3, Francisco's prior sentences are by definition "not considered related" because his prior offenses "were separated by an intervening arrest." As the word "otherwise" makes clear, whether an intervening arrest was present constitutes a *threshold* question that, if answered in the affirmative, precludes any further inquiry to determine whether the prior sentences were imposed in related cases. Because Francisco's prior sentences were imposed in unrelated cases, the sentences must be counted separately under § 4A1.2(a)(2), thereby leaving Francisco with "two prior felony convictions" and subject to § 4B1.1, the career offender provision. We note that other Circuits have reached the same result. *See United States v. Hallman*, 23 F.3d 821, 825 (3d Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 216, 130 L.Ed.2d 144 (1994); *United States v. Springs*, 17 F.3d 192, 195–96 (7th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 375, —

L.Ed.2d —— (1994); *United States v. Gallegos–Gonzalez*, 3 F.3d 325, 327 (9th Cir.1993).

In deciding differently, the district judge reasoned that the intervening arrest language did not apply because "there was no prior sentence.... Both sentences took place at the same time." This interpretation of Application Note 3 is inconsistent with its plain language. According to Application Note 3, "prior sentences" include sentences imposed for offenses that were *consolidated for sentencing*. Clearly then, Application Note 3 contemplates that "prior sentences" include sentences that were imposed at the same time.

In sum, the district court erred in its interpretation of "prior sentences" under U.S.S.G. § 4A1.2 and its finding that Francisco was not a career offender.[6]

## CONCLUSION

For the reasons stated above, the convictions of all appellants are affirmed and the case of Carlos Francisco only is remanded to the district court for his resentencing under the career offender provision.

---

5. The commentary to the Sentencing Guidelines is binding on federal courts, unless it violates the Constitution or a federal statute, or is inconsistent with the Guideline it is interpreting. *See Stinson v. United States*, — U.S. —, —— —, 113 S.Ct. 1913, 1917–18, 123 L.Ed.2d 598 (1993).

6. Francisco mistakenly relies on *United States v. Lopez*, 961 F.2d 384 (2d Cir.1992). In that case, we interpreted an earlier version of the Guidelines commentary that did not include the "intervening arrest" language, which was added in November 1991.