UNITED STATES of America, Appellee,

v.

Virgil P. RIVERS, Defendant–Appellant.

No. 820, Docket 94–1344.

United States Court of Appeals,
Second Circuit.

Argued Jan. 19, 1995.

Decided March 20, 1995.

Georgia J. Hinde, New York City, for defendant-appellant.

Julie E. Katzman, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Elizabeth A. Lesser, Asst. U.S. Atty., on the brief), for appellee.

Before NEWMAN, Chief Judge, MINER and CABRANES, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal presents Sentencing Guidelines issues concerning the selection of a criminal history category and the extent of a permissible departure for a defendant classified as a career offender. The issues arise on an appeal by Virgil Rivers from the June 17, 1994, judgment of the District Court for the Eastern District of New York (Raymond J. Dearie, Judge) convicting him, on his guilty plea, of bank robbery and firearm offenses. Rivers contends that the District Judge incorrectly counted his prior offenses when calculating his criminal history category and determining his career offender status. He also contends that the District Judge adopted an erroneous view of the scope of his discretion to depart downward from the sentence applicable under the career offender guideline. Because the record is ambiguous with respect to both contentions, we remand to the District Court for clarification.

## Background

In September 1991, Rivers participated in an armed robbery of a Bowery Savings Bank branch in Brooklyn, from which $11,250 was stolen. After his arrest, Rivers pleaded guilty to participating in the bank robbery, in violation of 18 U.S.C. § 2113(d) (1988), and to possessing and displaying a firearm during the course of the robbery, in violation of 18 U.S.C. § 924(c) (1988).

In determining the sentence, the District Judge recognized that a key determinant of the applicable sentence range was the proper treatment of the defendant's prior criminal record. That record consisted of four prior convictions for robberies committed over a span of several months in 1974, 17 years before the Bowery Savings Bank robbery. The presentence report summarized the conduct underlying his prior offenses as follows:

(1) On July 15, 1974, Rivers acted as a lookout while a confederate robbed a bank. After this robbery, Rivers was arrested but released on bail.

(2) On September 1, 1974, Rivers and three others robbed a victim at gunpoint.

(3) On September 9, 1974, Rivers and two others robbed a store at gunpoint. Again, Rivers was arrested but released on bail.

(4) On December 23, 1974, Rivers participated in an armed robbery in which petty cash and a car were stolen.

After his arrest for the December 23 robbery, Rivers was tried on federal charges for the July 15, 1974, bank robbery, for which he was sentenced to 18 years' imprisonment. Thereafter, he pled guilty to state charges for the three other 1974 robberies, for which he was sentenced to three concurrent 5–year terms of imprisonment, to be served in federal custody concurrent to the federal term imposed for the bank robbery. Rivers was subsequently paroled from federal custody in June 1982, and discharged from parole in June 1987.

Judge Dearie concluded that Rivers's four prior sentences were imposed in "unrelated cases," U.S.S.G. § 4A1.2(a)(2), and that they should therefore be counted separately in determining his criminal history category, *id.*, resulting in 12 criminal history points, *id.* § 4A1.1(a), and a criminal history category of V. In addition, Rivers's four prior offenses, if considered "unrelated," classified him as a career offender, *id.*, § 4B1.1. This classification automatically increased his criminal his-

tory category from V to VI, and raised his offense level from 23 to 34. A three-level downward adjustment for acceptance of responsibility produced an adjusted offense level of 31. In criminal history category VI, offense level 31 yielded a sentencing range, for the robbery, of 188 to 235 months. After adding the mandatory five-year consecutive sentence under 18 U.S.C. § 924(c), Rivers's Guidelines sentencing range was 20 years and 8 months to 24 years and 7 months.

After a hearing, Judge Dearie determined that Rivers's criminal history category overrepresented his likelihood of recidivism, and he therefore made a downward departure by reducing the criminal history category from VI to IV. With an adjusted offense level of 31 and the statutory five-year consecutive term, the sentencing range after the departure was 17 years and 7 months to 20 years and 8 months. Judge Dearie sentenced Rivers to the lowest point in this range, 17 years and 7 months.

### Discussion

Rivers contends that the District Court applied the wrong legal standard in finding that the sentences for his 1974 offenses were (a) imposed in "unrelated cases" and (b) should therefore be counted separately, and that, as a result, he was improperly placed in criminal history category VI and classified as a career offender. Rivers also contends that, even if the prior offenses were unrelated and he was properly classified as a career offender, the District Judge mistakenly believed that, with respect to the sentencing table, his departure authority was limited to a "horizontal" reduction in the criminal history category and that he did not have discretion to make a "vertical" reduction below the offense level specified by the career offender guideline. We examine each of these arguments in turn, and then briefly discuss procedures on remand.

### I. Counting Prior Offenses

A defendant's criminal history category and his career offender status both depend on the number of offenses the defendant has committed and been convicted of within a specified period prior to the commission of the offense for which he is currently being sentenced. See U.S.S.G. §§ 4A1.1, 4A1.2, 4B1.1, 4B1.2. For these purposes, prior sentences are counted separately if they were imposed in "unrelated cases," but are generally treated as one sentence if they were imposed in "related cases." See id. §§ 4A1.2(a)(2), 4B1.2(3). The sentence in a current case therefore depends significantly on whether sentences in prior cases are found to be "related" or "unrelated." In Rivers's case, if his four 1974 offenses were all "related," his criminal history category would be III (three points for one of the convictions, id. § 4A1.1(a), plus one point for each of the other three, id. § 4A1.1(f)), and he would not be classified as a career offender. His Guidelines range would then be 41 to 51 months. If, on the other hand, all of his prior offenses were "unrelated," as the District Court found, then his criminal history category would initially be V (three points for each of the four convictions, id. § 4A1.1(a)).[1] More significantly, because he would have committed at least two prior "unrelated" violent (or drug-based) felonies, he would also be classified as a career offender, which would increase his criminal history category to VI and his adjusted offense level to 31. See id. § 4B1.1. His Guidelines sentencing range would then be 188 to 235 months (15 years, eight months, to 19 years, seven months)—more than four times longer than if the prior offenses were "related."[2]

Application note 3 to section 4A1.2 ("Note 3") provides guidance for determining whether prior sentences were imposed in "related

---

1. Prior sentences exceeding one year and one month are counted if they were imposed within 15 years of the start of the current offense, or if, as in Rivers's case, the defendant was incarcerated during any part of such 15-year period. U.S.S.G. § 4A1.2(e)(1). Since Rivers was incarcerated on the prior offenses until paroled in 1982, he was in custody within 15 years of the 1991 offense.

2. Each of these calculations reflects a three-level downward adjustment for acceptance of responsibility. In addition, Rivers is subject to a consecutive five-year term for his violation of 18 U.S.C. § 924(c).

cases." In its current form—which was in effect when Rivers was sentenced—Note 3 reads: "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)." *Id.* § 4A1.2, comment. (n.3) (1994). In view of this clear language, we have held that "whether an intervening arrest was present constitutes a *threshold* question that, if answered in the affirmative, precludes any further inquiry to determine whether the prior sentences were imposed in related cases," *United States v. Boonphakdee*, 40 F.3d 538, 544 (2d Cir.1994). Three of Rivers's prior offenses were separated by intervening arrests.

However, the current version of Note 3 did not become effective until November 1, 1991, several months after the Bowery Savings Bank robbery for which Rivers is being sentenced. *See* U.S.S.G.App. C, amend. 382. At the time Rivers committed his offense, Note 3 read:

> *Related Cases.* Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing. The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public. For example, if the defendant commits a number of offenses on independent occasions separated by arrests, and the resulting criminal cases are consolidated and result in a combined sentence of eight years, counting merely three points for this factor will not adequately reflect either the seriousness of the defendant's criminal history or the frequency with which he commits crimes. In such circumstances, the court should consider whether departure is warranted.

*Id.* § 4A1.2, comment. (n. 3) (1990) (amended Nov. 1, 1991). In this pre-amendment form, Note 3 did not automatically treat offenses separated by arrests as "unrelated." Indeed, the unamended Note expressly envisioned the possibility that offenses separated by intervening arrests might be "related" under the standard articulated in its first sentence, though it suggested that an upward departure might be warranted if deeming such offenses "related," at least because of consolidation, underrepresented the seriousness of a defendant's criminal history. Thus, the 1991 amendment to Note 3 substantially modified the relevance of intervening arrests by transforming them into threshold conditions that automatically render offenses "unrelated." The amendment thereby inflated the criminal history categories—and thus the potential sentencing ranges—of defendants whose prior offenses might have qualified as "related" before the amendment, even though separated by intervening arrests.

■ Ordinarily, the sentencing court must apply the version of the Guidelines that is in effect at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4), (b) (1988); *see also* U.S.S.G. § 1B1.11. However, the application of a guideline amendment that takes effect after the defendant commits his offense and increases the punishment for that offense violates the *Ex Post Facto* Clause, U.S. Const. art. I, § 9, cl. 3, and the sentencing court must therefore apply the pre-amendment version of the Guidelines. *See United States v. Paccione*, 949 F.2d 1183, 1204 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992); *see also Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). Since Note 3 was amended after Rivers participated in the robbery of the Bowery Savings Bank in 1991, and this amendment might have substantially increased his punishment by modifying the calculation of his criminal history category, the District Court should have applied the unamended version of Note 3.

■ It appears that the District Court applied the current version of Note 3, the version quoted to us in briefs by both the Government, Brief for Appellee at 12–13, and Rivers, Brief for Appellant at 34. If the Court did so, it would have deemed at least three of the 1974 offenses to have been "unrelated" solely because they were separated by intervening arrests. However, the record is not clear on this point. It is possible that

the Court applied the unamended Note 3 and concluded that the 1974 offenses were unrelated because of their circumstances, with the fact of some intervening arrests regarded as relevant but not automatically conclusive. But if the Court was unaware at sentencing that the unamended version of Note 3 applied, it might now conclude that the 1974 offenses, or some of them, were "related"— whether as part of a single scheme or plan, *see United States v. Butler,* 970 F.2d 1017, 1024 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 480, 121 L.Ed.2d 386 (1992), as factually related offenses that were functionally consolidated for sentencing, *see United States v. Aubrey,* 986 F.2d 14, 14 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993); *United States v. Lopez,* 961 F.2d 384, 387 (2d Cir.1992), or as related in some broader sense, *see Butler,* 970 F.2d at 1029–30 (Newman, J., concurring). Because of the uncertainty as to which version was applied and what findings would be made under the correct version if it was not applied, we believe that a remand is necessary to allow the District Court to clarify whether it applied the amended version of Note 3 and, if so, to reconsider the factual issue of relatedness under the proper standard.

## II. Departure for Career Offenders

▮ Rivers also argues that the District Judge mistakenly believed that he lacked the authority to depart below the offense level imposed under the career offender guideline, and that the Judge refused to depart solely because of this error. A defendant may seek appellate review of a refusal to depart downward if that refusal was based on the mistaken conclusion that the court did not have the legal authority to depart. *See United States v. Piervinanzi,* 23 F.3d 670, 685 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 259, 130 L.Ed.2d 179 (1994). Before examining the District Court's understanding of its authority in this case, it will be helpful to consider the nature of the departure in question.

Whether a defendant is categorized as a career offender depends largely on his criminal history. As noted above, however, career offender status not only increases the defen-

dant's criminal history category (a so-called "horizontal" adjustment, due to the orientation of the sentencing table), but also significantly increases his offense level (a so-called "vertical" adjustment). The degree of increase in the offense level varies with the statutory maximum sentence for the offense. *See* U.S.S.G. § 4B1.1. At issue here is the scope of the sentencing court's power to depart downward from the sentencing range specified by the career offender guideline when the court determines that such sentencing range overstates the seriousness of the defendant's prior offenses or his likelihood of recidivism.

▮ In prior decisions, we have stated that vertical departures may not be based on criminal history considerations, including the likelihood of recidivism. *See United States v. Farah,* 991 F.2d 1065, 1070 (2d Cir.1993); *United States v. Deutsch,* 987 F.2d 878, 887 (2d Cir.1993); *United States v. Coe,* 891 F.2d 405, 411–12 (2d Cir.1989). However, these authorities stand only for the sensible proposition that departures based on criminal history factors should be carried out by increasing or decreasing only the sentencing variable affected by the defendant's criminal history. Ordinarily—and in all of the cases cited above—a defendant's criminal history will affect only his criminal history category and not his offense level. But under the career offender guideline, criminal history determines both the criminal history category and the offense level.

Recognizing the unique impact of criminal history in the sentencing of career offenders, the six other Circuits that have confronted the issue have all ruled that vertical departures are permissible in this context. *See United States v. Shoupe,* 35 F.3d 835, 838–39 (3d Cir.1994); *United States v. Fletcher,* 15 F.3d 553, 557 (6th Cir.1994); *United States v. Reyes,* 8 F.3d 1379, 1389 (9th Cir.1993); *United States v. Clark,* 8 F.3d 839, 846 (D.C.Cir.1993); *United States v. Bowser,* 941 F.2d 1019, 1026 (10th Cir.1991); *United States v. Senior,* 935 F.2d 149, 151 (8th Cir. 1991).

Despite the unanimity of appellate rulings, in none of which was certiorari sought by the Government, the Government suggests that

the only permissible departure is a horizontal reduction across criminal history categories, and that a vertical departure to a lower offense level is prohibited. In support of this view, the Government cites section 4A1.3 of the Guidelines, a policy statement that gives guidance for departures when the defendant's criminal history category—the horizontal variable—does not adequately represent the seriousness of his past offenses or likelihood of recidivism. For such departures, the Commission intends the courts to "use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable," U.S.S.G. § 4A1.3.

We agree with the other circuits that section 4A1.3 manifests the Commission's view that a sentencing judge should exercise discretion whenever the judge concludes that the consequences of the mathematical prior-history calculation, prescribed by sections 4A1.1 and 4A1.2, either underrepresent or overrepresent the seriousness of a defendant's prior record. We also agree that in the case of a defendant whose offense level is raised by his criminal history into career offender status, such discretion may be exercised, to the extent thought appropriate, to reduce either the criminal history category or the offense level, or both.

■ In this case, Judge Dearie found, after a hearing, that though Rivers's criminal history was serious, his likelihood of recidivism was much lower than that of the typical career offender. Referring to the policy statement in section 4A1.3, the Judge determined that Rivers's criminal history was most similar to other defendants in category IV. He therefore made a horizontal departure to that category, but refused to make a vertical departure.

A review of the record strongly suggests that Judge Dearie's refusal to depart vertically may have been due to the erroneous belief that he lacked authority to do so. For example, the Judge remarked:

I'm stating this for the record. If I thought that there was some viable way beyond the relatively modest departure that I have in mind, I would consider it

[sic] a further departure, [though] obviously not a substantial one. . . .

And he specifically referred to section 4A1.3 as limiting his departure authority:

I believe 4A1.3 gives me the authority to look at this rather unusual criminal history and to make the judgment as to whether these two additional levels [*i.e.*, criminal history categories] are needed to necessarily reflect an enhanced degree of likely recidivist conduct. And in my judgment, they don't. That's all I can do. That's all I believe the law permits me to do here.

Although Judge Dearie made other statements that can be read as suggesting that he might not have made the requested departure even if he had the authority to do so, the record is sufficiently ambiguous to require a remand for clarification by the District Court and, if need be, for resentencing. *See United States v. Speenburgh*, 990 F.2d 72, 75 (2d Cir.1993); *United States v. Ritchey*, 949 F.2d 61, 63 (2d Cir.1991).

In most sentencing appeals, a reviewing court is entitled to assume that the sentencing judge understood all the available sentencing options, including whatever departure authority existed in the circumstances of the case. If a judge has discretion as to some aspect of the sentence, such as a downward departure in appropriate circumstances, the absence of a favorable outcome for the defendant can normally be attributed to the judge's exercise of discretion. *See United States v. Rosalez–Cortez*, 19 F.3d 1210, 1221 (7th Cir.1994); *United States v. DiIorio*, 948 F.2d 1, 9 (1st Cir.1991). And the assumption that the judge exercised available discretion can normally be made, whether or not the judge expressly so stated. Some sentencing judges understandably would prefer to reject departure requests implicitly, rather than announce that they have discretion to make a departure but have concluded that the defendant does not merit such consideration.

In some cases, however, probably few in number, a reviewing court should be cautious in making the assumption that the sentencing judge fully understood all options and, in the exercise of discretion, declined to accord the defendant some favorable consideration.

Caution is warranted, for example, in cases where the judge's option turns on an obscure point of law or where the judge's sentencing remarks create ambiguity as to whether the judge correctly understood an available option. Under the exceedingly complex regime of the Sentencing Guidelines, a few cases of this sort are bound to arise. Though in some instances, despite an ambiguous record, the judge may well have correctly understood all aspects of an intricate Guidelines analysis, a court of appeals need not *always* make that assumption, especially when many years of extra imprisonment might hang in the balance.

The pending case illustrates the point. The issue of whether departure authority for a career offender extends to an offense level reduction in addition to a criminal history category reduction is rather esoteric, and the sentencing judge's remarks reflect considerable ambiguity. In these circumstances, we deem it prudent to remand for clarification. By remanding to afford the District Judge an opportunity to clarify the bases of his sentencing decisions, we intend no disrespect to the able and conscientious District Judge. Regrettably, a remand for clarification of a sentencing decision in another case has been thus interpreted. *See United States v. Ekhator,* 853 F.Supp. 630, 632 (E.D.N.Y.1994). We simply decline to take the risk that the sentencing judge did not fully appreciate his options; if he did not and if, upon further consideration, he elects to impose a more lenient sentence, an affirmance without an opportunity for clarification would be entirely unfair.

## III. Procedure on Remand

Remand is necessary in this case primarily because the record leaves us uncertain as to the bases for the District Court's resolution of the two issues discussed above. Accordingly, the District Court's first step on remand should be to clarify its previous actions. If these clarifications reveal that the District Judge employed the correct legal standard in finding that Rivers's prior offenses were "unrelated," and understood his discretion to depart vertically from the career offender offense level, then the sentence as imposed should remain in force, and no further action need be taken. *See Ritchey,* 949 F.2d at 63; *United States v. Sharpsteen,* 913 F.2d 59, 64 (2d Cir.1990). The clarification may be made either by filing a brief written statement or placing an explanation on the record, *see United States v. Califano,* 978 F.2d 65, 66 (2d Cir.1992). We note that such clarification would not require Rivers's presence because no resentencing would occur. On the other hand, if the District Judge determines that he previously relied on the current version of Note 3 in determining that the prior offenses were "unrelated," or misapprehended his discretion to depart so as to reduce the offense level, or both, then he should undertake appropriate fact-finding as to the relatedness of the prior offenses or exercise his discretion as to a vertical departure, or both.

If the District Judge's clarification leads to further fact-finding or a further exercise of discretion, consideration will then have to be given to two procedural matters. The first is whether the sentence should technically be vacated, or whether that step needs to occur only if, as a result of fact-finding or an exercise of discretion, the sentence is modified. The second is whether the presence of the defendant is required.[3] Though the defendant's presence is not required for the initial step at which the District Judge will clarify his decision, it is arguable that any renewed fact-finding or exercise of sentencing discretion is the functional equivalent of a sentencing proceeding at which presence is required. *See United States v. Doe,* 964 F.2d 157, 158–59 (2d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 628, 121 L.Ed.2d 560 (1992); *United States v. Pagan,* 785 F.2d 378, 380 (2d Cir.), *cert. denied,* 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986); *United States v. Johnson,* 315 F.2d 714, 716 (2d Cir.1963), *cert. denied,* 375 U.S. 971, 84 S.Ct.

---

**3.** Since we are not vacating the sentence but remanding for a clarification that might result in the *District Court*'s decision to vacate the sentence, we need not decide whether an *appellate court*'s direction to vacate a sentence, done solely to afford a sentencing judge an opportunity to clarify the basis for that sentence and reimpose it if the clarification eliminates the prior ambiguity, should be considered a resentencing that requires a prisoner's presence.

477, 11 L.Ed.2d 418 (1964). On the other hand, Rule 43 of the Federal Rules of Criminal Procedure specifies that presence is not required for a sentence reduction under Rule 35. Since our remand, however, is initially for clarification, it is not clear that amended Rule 35 is even implicated, since that rule applies to a correction following a determination that a sentence has been imposed in violation of law, and, even if it is implicated, it is not clear to what extent Rule 43's provisions apply to amended Rule 35. We express no view as to whether the defendant's presence is required in the event that clarification leads to further fact-finding or an exercise of discretion, or whether any revision of the sentence is warranted.

### Conclusion

The matter is remanded to the District Court for clarification, and, if necessary, for further proceedings in accordance with this opinion.