UNITED STATES of America, Plaintiff,

v.

Patrick MOLONEY, Defendant.

No. 93–CR–292L.

United States District Court,
W.D. New York.

Nov. 13, 1996.

---

Christopher A. Buscaglia, United States Attorney's Office, Buffalo, NY, for plaintiff.

William Clauss, Federal Public Defender, Rochester, NY, for defendant.

1. This was the applicable Guidelines section under the 1993 United States Sentencing Guidelines in effect at the time of Moloney's trial and sentencing. As renumbered by the 1995 Guidelines, the identical provision is now § 2B1.1(b)(6)(B).

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

A Brinks Armored Car Company money depot, located in Rochester, New York, was robbed on January 5, 1993. Approximately 7.4 million dollars were taken. Along with three others, defendant Patrick Moloney ("Moloney") was charged with crimes related to the robbery.

The matter was tried before me and on November 28, 1994, Moloney was convicted of conspiracy to possess stolen money in violation of 18 U.S.C. § 371. He was sentenced by me to fifty-one months imprisonment, based in part on an upward enhancement authorized under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2B1.1(b)(7)(B)[1], which relates to crimes that affect financial institutions and from which a defendant derives more than one million dollars in gross receipts.

Moloney appealed his conviction and sentence on numerous grounds, including the Section 2B1.1(b)(7)(B) enhancement. On appeal, the United States Court of Appeals for the Second Circuit affirmed Moloney's conviction and sentencing in all respects except one. *See United States v. Millar,* 79 F.3d 338 (2d Cir.1996). The Court of Appeals remanded the case for a limited purpose, that is, to determine whether the sentencing enhancement under Section 2B1.1(b)(7)(B) was factually supported. As set forth herein, I find that the enhancement was proper and, thus, Moloney's sentence will not be changed.

### BACKGROUND [2]

U.S.S.G. § 2B1.1(b)(7)(B) provides for a four-level sentencing increase if the offense "affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense". Application Note 11 to Guidelines § 2B1.1 states in part:

2. The facts adduced at trial are described in the Court of Appeal's Opinion, 79 F.3d 338 (2d Cir. 1996), familiarity with which is assumed.

"The defendant derived more than $1,000,-000 in gross receipts from the offense," as used in subsection (b)(7)(B), generally means that the gross receipts to the defendant individually, rather than to all participants, exceeded $1,000,000.

At Moloney's sentencing, I concurred with the Presentence Investigation Report ("PSI") that the Section 2B1.1(b)(7)(B) enhancement was appropriate. The PSI stated that:

> as both Samuel Millar and Patrick Moloney had access to the money seized from ... Apartment 10D ... and money was confiscated from their respective residence's, it is our assessment that both Samuel Millar and Patrick Moloney, whether jointly or independently, derived more that $1,000,000 in gross receipts from this offense. As such, a 4 level enhancement is appropriate in this case. PSI, January 31, 1995, at ¶ 52.

Adopting this recommendation, I noted that "the proof was clear concerning [Moloney's] control over that apartment. His suitcase was there stacked with money. His fingerprints were there. ' He was seen there several times.... I think the proof is he had access to and therefore derived 2.2 million dollars of proceeds." Transcript of Sentencing, February 27, 1995, at p. 30. Accordingly, I enhanced Moloney's sentence in accordance with U.S.S.G. § 2B1.1(b)(7)(B).

The Court of Appeals found that these grounds were inadequate for imposing a Section 2B1.1(b)(7)(B) enhancement. Citing the requirements of Application Note 11, the Court of Appeals stated that "the district court did not find that Moloney *individually* derived more than $1,000,000 dollars in proceeds...." 79 F.3d at 346. The Court of Appeals noted that several facts adduced at trial could support a finding that Moloney individually received in excess of one million dollars, "but the district court made no explicit finding in that regard." *Id.* Accordingly, the case was remanded "for factual findings to establish the amount of gross receipts Moloney derived individually—not jointly—from the offense and for resentencing, if appropriate, under the Guidelines." *Id.*

Upon remand, I requested the Probation Office to prepare an addendum to the PSI, addressing the issue raised by the Court of Appeals. An Addendum was prepared which stated that "[a]lthough ... there is no concrete evidence that the defendant did or did not derive more than $1,000,000, ... the Court, based on the factors set forth in this report, could reasonably conclude that the defendant did individually derive more than $1,000,000 from this offense." PSI Addendum at p. 3.

I permitted the Government and Moloney to submit Statements With Respect to Sentencing Factors in response to the PSI Addendum. In addition to asserting that the trial evidence did not support an upward enhancement, Moloney requested a hearing so that he could introduce additional evidence on this matter.

Having fully considered the PSI Addendum and the parties' submissions, and based upon the evidence adduced at trial, I hereby find that the Section 2B1.1(b)(7)(B) enhancement was proper. Because resentencing is unnecessary no additional hearing is required.

## DISCUSSION

### A) *The Court of Appeal's Decision Does Not Compel A Second Evidentiary Hearing*

It is well established that when a sentence is *vacated,* the district judge must resentence "as if sentencing de novo." *United States v. DeRiggi,* 893 F.Supp. 171, 178 (E.D.N.Y.), *aff'd,* 72 F.3d 7 (2d Cir.1995); *see also United States v. Maldonado,* 996 F.2d 598, 599 (2d Cir.1993) (finding that, for purposes of a defendant's right to allocution, "when a sentence has been vacated, the defendant is placed in the same position as if he had never been sentenced"). Under such circumstances, several procedural requirements—such as the presence of the defendant, his right of allocution, and in certain circumstances, the submission of evidence—must be observed. *See* Fed.R.Crim.Pro. 32(c); U.S.S.G. § 6A1.3, "Resolution of Disputed Factors" (Policy Statement), Commentary.

■ However, when a case is remanded with instructions to clarify the bases for the sentence, without actually vacating it, the district court need not necessarily begin the sentencing process anew. *See United States v. Ekhator*, 853 F.Supp. 630, 634–636 (E.D.N.Y.1994).

This distinction is reflected in 18 U.S.C. § 3742, entitled "Review of a Sentence", which distinguishes between sentences imposed as a result of an incorrect application of the sentencing guidelines, versus those sentences that are outside the applicable guideline range and/or are unreasonable. *See* 18 U.S.C. § 3742(e)(2), (3). Those sentences imposed as a result of an incorrect application of the sentencing guidelines are to be remanded "for further sentencing proceedings with such instructions as the court considers appropriate." 18 U.S.C. § 3742(f)(1). Those sentences which are outside the applicable guideline range and/or are unreasonable are to be "set aside" and remanded for further sentencing proceedings with such instructions as the court considers appropriate. 18 U.S.C. § 3742(f)(2). This statute "thus reflects a clear distinction between remanding for further sentencing proceedings and setting aside (i.e., vacating) a sentence." *Ekhator*, 853 F.Supp. at 636.

In this case, Moloney's sentence was not vacated in whole or in part by the Court of Appeals. Thus, it is not incumbent upon me to begin sentencing proceedings anew. Rather, the Court of Appeals remanded this case to me for factual findings and resentencing **if necessary.**

Set forth below, and based upon the evidence adduced at trial, are the requisite factual findings supporting the enhancement. Because I have come to the same determination as I previously did regarding the enhancement and sentence, no resentencing is necessary. And because no resentencing is necessary, no second hearing is required.[3] *See United States v. Rivers*, 50 F.3d 1126, 1132 (2d Cir.1995) (finding that, on remand, if district court could clarify in a written statement that it had correctly applied Guidelines standards, no hearing was necessary); *United States v. Naugle*, 879 F.Supp. 262 (E.D.N.Y.) (on remand, district court explained its application of the Guidelines to the facts of the case, thus affirming its earlier sentence absent additional hearing), *aff'd*, 54 F.3d 765 (2d Cir.1995); *see also United States v. Miller*, 900 F.2d 919, 925 (6th Cir. 1990) (although district court failed to state explicitly the statutory factors it relied upon at sentencing, correction could be made on motion of the parties and no new sentencing hearing was required).

*United States v. Rivers* is instructive. There, the Circuit remanded the case so that the district court could clarify two things: whether it had applied the correct version of the Guidelines (concerning unrelated offenses); and whether it understood its discretion to make a downward departure. The Circuit stated that "[r]emand is necessary in this case primarily because the record leaves

**3.** Moloney requests a hearing and suggests that he intends to introduce testimony from his former co-defendant Samuel Millar or Millar's attorney that the money recovered was entirely Millar's.

Moloney's suggestion that co-defendant Millar will now be willing to testify that all of the money belonged to him is totally unpersuasive. There is no reason why Millar would now testify when he would not do so at the original sentencing hearing when this precise issue was before the Court. The Court conducted a full sentencing hearing at that time and there is no reason to have a second hearing now. The evidence proffered now was certainly available, if at all, at that prior hearing. Furthermore, the likelihood that Millar would testify is illusory. Millar remains subject to prosecution for the bank robbery itself and it is preposterous to think that he would subject himself to cross-examination and possible prosecu-

tion without receiving immunity, something the Government certainly has not offered to him in this case.

The suggestion that Millar's attorney should be allowed to testify and repeat what Millar allegedly told him is totally unacceptable. Such evidence is obviously hearsay which, of course does not automatically bar its receipt at a sentencing hearing but I find that, in the circumstances of this case, such a rendition by defense counsel would be totally untrustworthy. *See* U.S.S.G. § 6A1.3(a) (during sentencing, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy"); *see also United States v. Fatico*, 579 F.2d 707, 713 (2d Cir.1978), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980).

us uncertain as to the bases for the District Court's resolution of the two issues discussed above." 50 F.3d at 1132. The Circuit further stated that:

the District Court's first step on remand should be to clarify its previous actions. If these clarifications reveal that the District Judge employed the correct legal standard [concerning prior offenses] and understood his discretion to depart vertically from the career offender offense level, then the sentence as imposed should remain in force, and no further action need be taken.... The clarification may be made either by filing a brief written statement or placing an explanation on the record.... We note that such clarification would not require Rivers's presence **because no resentencing would occur.** *Id.* (Emphasis added) (Citations omitted)

This case calls for just such a clarification. A hearing was held when Moloney was sentenced in February 1995. At that time Moloney had an opportunity to object to recommendations contained in the PSI—including the recommended Section 2B1.1(b)(7)(B) enhancement—and he did so. Because this Decision and Order merely clarifies the bases for Moloney's sentence (all of which bases arose from evidence produced at trial and, thus, existed at the sentencing), the sentence should remain in force, and no further action need be taken.

### B) *The Trial Evidence Demonstrates That Moloney Individually Derived Over $1 Million from the Offense*

■ Based upon the evidence produced at trial, I find that Moloney **individually** derived over one million dollars from the offense. To the extent my language during the sentencing proceeding did not make this clear, it was an unfortunate choice of words. However, the evidence produced at trial clearly demonstrates that Moloney individually derived such sum of money, and I now correct the record to reflect this finding.

At Moloney's sentencing, I articulated generally the numerous pieces of evidence on which my sentence was based:

The evidence concerning the renting of the apartment 10D on 330 First Avenue, the discovery of the money, over two million dollars, your connection to that apartment with fingerprints and hair samples, suitcases stacked with money, suitcases with your name on it, tapes of your repeated visits to apartment 10D, evidence that the jury saw of your carrying packs, on at least one occasion, November the 6th, 1993, a witness observed what appeared to be packets of money in back packs, the carrying of a money counter into that apartment, a carrying of card tables into that apartment, evidence from an FBI agent that she heard the money counter being used after you had entered the apartment, over a hundred and eighty thousand dollars found in your own residence in cash or travelers checks, evidence of cash expenditures to relatives and friends in several thousands of dollars, evidence of an attempt to deposit twenty-one thousand dollars in a Florida bank but declining based on the information that there would be report of that, substantial proof about your association with Mr. Millar, various other cash purchases, either separately or together with Mr. Millar relating to automobiles, homes, all of that together with your prior acts of good work must be considered by the Court. Transcript of Sentencing, February 27, 1995, at 77–78.

For purposes of this remand, I now set forth specifically those items showing that Moloney *individually* derived more than $1 million in gross receipts from the offense.

■ Like any other matter in dispute, the Court may rely on either direct or circumstantial evidence to resolve a disputed issue of fact. *See, e.g., United States v. Sklar,* 920 F.2d 107, 112 (1st Cir.1990) (matters relevant to sentencing may be established by circumstantial as well as direct evidence, so long as the standard of reliability is met); *see also United States v. Silvers,* 84 F.3d 1317, 1327 (10th Cir.1996), *petition for cert. filed,* October 4, 1996 (No. 96–6225) (for sentencing purposes the government was "required to prove by a preponderance of either direct or circumstantial evidence only that the *defendant* [possessed with intent to distribute marijuana plants] ...") The Government

must establish disputed items by a preponderance of the evidence at a sentencing hearing. U.S.S.G. § 6A1.3, Commentary.

I find as fact that it was Moloney who subleased apartment 10D from the tenant, Charles McCormick. It was in that apartment, of course, that over $2,000,000 was recovered by the FBI. Moloney repeatedly was seen entering the apartment. His fingerprints, head hair and items of personal property were found in apartment 10D. The money counter found in apartment 10D was obtained by Moloney and an FBI agent heard a money counter being used shortly after Moloney entered the apartment.

By itself, the above evidence suggests that Moloney individually derived at least $1,000,-000 from the robbery. But there is much more direct evidence to establish that fact. One hundred eighty-three thousand three hundred dollars was found in Moloney's apartment. In view of Moloney's lifestyle and vocation of ministering to the poor, such a large cache is significant. Furthermore, one of several suitcases found in the closed closet in apartment 10D contained $337,025. This suitcase had a name tag containing Moloney's name, address and telephone number in New York City. This information was written on an airline tag from Aerlingus, an Irish carrier. Another duffle bag contained $372,490. In this bag were several hair samples identified as similar to Moloney's head hair.

The above items directly connected Moloney with approximately $893,000. But there is still other evidence of unexplained wealth. Moloney possessed and attempted to deposit $21,000 at the Bank of Tampa a few months after the Brinks robbery. In addition, he made substantial cash loans to relatives and purchased a Ford Explorer.

Finally, I find that the proximity of several other suitcases in the same small closet with the bags containing Moloney's head hairs and the bag with his identification label is very strong circumstantial evidence that Moloney individually benefitted from at least a portion of that money as well. In that same small closet there were other suitcases and bags containing well over $1,000,000.

In view of the $893,000 directly connected to Moloney, and in view of the other evidence of his purchases and expenditures, and in view of the substantial sums found at the same location, I have no difficulty finding by a preponderance of the evidence that Moloney individually derived more than $1,000,000 as a direct fruit of his crime: conspiracy to possess stolen money.

### *CONCLUSION*

For all the above reasons, Moloney's sentence will not be modified and his request for a hearing is denied.

IT IS SO ORDERED.