**UNITED STATES of America**

v.

**Marvin WILLIAMS, Defendant.**

**No. 98 CR. 442(JSM).**

United States District Court, S.D. New York.

Dec. 1, 1999.

Bennett M. Epstein, New York City, for Marvin Williams.

Nicole Alexandra LaBarbera, Assist., Mary Jo White, U.S. Atty. New York City, for U.S.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge.

In the introduction to the Sentencing Guidelines the Sentencing Commission noted: "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." United States Sentencing Commission, *Guidelines Manual*, Ch. 1, Pt. A, § 3 (Nov.1998) ("U.S.S.G.").

Unfortunately, as prosecutors and the courts have endeavored to apply the Guidelines to accomplish this laudable goal, we sometimes overlook the fact that ending disparity in sentences imposed for similar offenses by similar offenders was not the only, or even the primary, congressional goal in adopting the Guidelines. Equally important, "Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity." *Id.*

Thus, Congress and the Commission recognized that there are two distinct types of disparity in sentencing. The first is the disparity found when two defendants who commit the same crime in identical circumstances receive different sentences. The second exists when the same sentence is imposed on two people whose crimes or circumstances are significantly different.

Experience suggests that a rigid application of the Sentencing Guidelines will eliminate the first type of disparity, but it will do so by creating the second type. Congress' goal that "appropriately different sentences [be imposed] for criminal conduct of differing severity" can only be achieved if judges recognize their obligation to depart from the guideline sentencing range in appropriate cases.

This is such a case.

## FACTS

Marvin Williams, the defendant, presents a picture that is all too familiar to any District Judge sitting in an urban court. Raised by a welfare mother in the housing projects of the Bronx, Williams began using marijuana at age ten and was adjudged a juvenile delinquent at the age of fifteen. At age nineteen he was convicted in state court of Attempted Criminal Sale of a Controlled Substance for having sold two glassine envelopes of heroin to an undercover officer. Nine months later Williams was convicted of selling one $10 dollar bag of crack to an undercover officer. At age twenty-one Williams had his third state drug conviction when he was arrested for selling crack on the street and was found to have sixty-one crack vials in his possession.

In the present case Williams was convicted after a bench trial for participating in the sale of twenty-nine grams of heroin to undercover police officers. From the evidence at trial it is not entirely clear what role Williams played in the transaction although he was present when the heroin was delivered and helped to count the money paid by the undercover policemen. It appears that Jerome Mayfield ran the operation and that Williams simply worked for him. It is also significant that although the undercovers purchased drugs from Mayfield on four occasions, Williams participated in only one of the transactions.

Because Williams' prior narcotics convictions make him subject to sentencing enhancements as a career offender under § 4B1.1, his total offense level is 34 and his criminal history category is VI resulting in a guideline range of 262–327 months. Without the career criminal enhancements Williams' offense level would be 20 and his criminal history category V resulting in a guideline range of 63–78 months.

## DISCUSSION

The defendant urges the Court to depart from the draconian range of the career offender guidelines, relying on *United States v. Rivers*, 50 F.3d 1126 (2d Cir. 1995), in which the Second Circuit held:

We agree with the other circuits that section 4A1.3 manifests the Commission's view that a sentencing judge should exercise discretion whenever the judge concludes that the consequences of the mathematical prior-history calculation, prescribed by sections 4A1.1 and 4A1.2, either underrepresent or overrepresent the seriousness of a defendant's prior record. We also agree that in the case of a defendant whose offense level is raised by his criminal history into career offender status, such discretion may be exercised, to the extent thought appropriate, to reduce either the criminal history category or the offense level, or both.

*Id.* at 1331.

While acknowledging that *Rivers* recognizes the power of the district court to depart from the career offender guidelines in some circumstances, the government argues that prior case law precludes the Court from departing on the ground urged here, to wit, the relatively minor nature of Williams' prior and current convictions. The principal support for the government's argument is found in the Second Circuit's opinion in *United States v. Richardson*, 923 F.2d 13 (2d Cir.1991), in which the court held that the fact that the defendant's offense of conviction involved only a small quantity of narcotics did not justify a departure from the career offender guidelines.

*Richardson* is distinguishable on two grounds. First, Richardson's prior convictions were for 1) robbery and 2) robbery and assault with intent to cause serious physical injury. The court in *Richardson* quoted from the statement of Senator Kennedy:

"[T]he average drug dealer has committed at least five assaults and robberies against strangers in order to ply his trade .... Career criminals must be put on notice that their chronic violence will be punished by maximum prison sentences for their offense without parole." 128 Cong.Rec. 26,517 (1982).

*Id.* at 16.

Thus, the circuit court viewed Richardson's prior convictions involving violent robbery and assault as placing him within the heartland of cases contemplated by the career offender provision. Subsequent to *Richardson* the Second Circuit affirmed a Judge Lasker decision to depart in a case in which he concluded that classifying the defendant as a career criminal because he had two prior state narcotics convictions for sales of small quantities of crack "would overrepresent the defendant's past criminal history." *United States v.*

*McFarland,* 1992 WL 395589 (S.D.N.Y.), *aff'd,* 996 F.2d 302 (2d Cir.1993). While Williams has one more prior conviction than McFarland did, as more fully developed below, the nature of those convictions is such that categorizing him as a career criminal also "significantly over-represents the seriousness of [his] criminal history." U.S.S.G. § 4A1.3, p.s.

The second fact that distinguishes this case is that *Richardson* was decided prior to *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), in which the Supreme Court emphasized the importance of the district court's departure power to the fair administration of the guideline system, stating:

> The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach toward the even-handedness and neutrality that are the distinguishing marks of any principled system of justice. In this respect, the Guidelines provide uniformity, predictability, and a degree of detachment lacking in our earlier system. This, too, must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

*Id.* at 113, 116 S.Ct. at 2053.

*Richardson* was also decided prior to the decision of the Second Circuit in *Rivers.*[1] In *Rivers* the Second Circuit recognized "the sentencing court's power to depart downward from the sentencing range specified by the career offender guideline when the court determines that such sentencing range overstates the seriousness of the defendant's prior offenses or his likelihood of recidivism." 50 F.3d at 1130. Nothing in the circuit court's *Rivers* opinion suggests that the district court should not examine the totality of the facts before it to determine whether the defendant's conduct in connection with the offense of conviction and his prior offenses place his case outside the heartland of cases to which the guideline applies.

▮ Implicit in a court's decision to apply a particular guideline to the defendant before it is the conclusion that the Sentencing Commission contemplated that the guideline would be applied to precisely the set of facts before the court. As the Supreme Court recognized in *Koon,* in assessing whether a particular case comes within the heartland of the applicable guideline, "the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Id.* at 98, 116 S.Ct. at 2046–47.

Such a "refined assessment" seems particularly necessary in applying the career offender guidelines because they encompass a much broader spectrum of criminal conduct than do those guidelines that are addressed to a single offense. It is easier to project a heartland for cases involving theft of mail having a value of $5000 than it is for career offender cases because the latter guidelines applies to a far wider variety of offenses of conviction and criminal histories.

---

1. The government notes that the Second Circuit followed *Richardson* in *United States v. Tejeda,* 146 F.3d 84 (2d Cir.1998) (per curiam), which was decided after *Koon* and *Rivers.* However, in *Tejeda* at least one of the defendant's prior convictions involved a crime of violence. Although it cited *Richardson,* the opinion in *Tejeda* did not offer any additional analysis and did not take note of the Second Circuit's affirmance of Judge Lasker's departure in *McFarland* or its opinion in *Rivers.* Thus, it appears that the court in *Tejeda* did not consider whether the decisions in *Koon* and *Rivers* cast doubt on the continued validity of *Richardson.*

"[D]ay-to-day experience in criminal sentencing" also suggests that there will be many case where it is entirely appropriate to apply the career offender guidelines to an offender whose offense of conviction involves only a small quantity of narcotics. A significant narcotics dealer may be arrested in possession of only a small quantity of drugs or may have been arrested after producing only a small amount of narcotics as a sample of his wares. In such circumstances, if the defendant's prior convictions or the surrounding facts demonstrate that he is a substantial narcotics violator, the career offender guidelines should be applied. Such is not the present case, however.

■ If one could present the case of Marvin Williams to those members of the Sentencing Commission who adopted the career offender guideline range of 262–327 months, it is impossible to believe that any one of them would say that his case was in the heartland of offenses to which the guideline was to apply. There is nothing in the offenses that establish his criminal history that suggests that he is a violent offender. While the Commission contemplated that the career offender guidelines would be applied to drug offenders whose crimes did not involve violence, the Commission also recognized the need to avoid an overly literal approach to Congress' expressed intention that a sentence at or near the maximum be imposed on repeat narcotics violators. *See* 28 U.S.C. § 994(h). Thus, in setting forth the background of the career offender guidelines the Commission stated:

> in accord with its general guideline promulgation authority under 28 U.S.C. § 994(a)-(f), and its amendment authority under 28 U.S.C. § 994(*o*) and (p), the Commission has modified the definition in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate . . . .

U.S.S.G. § 4B1.1, comment. (backg'd.). This passage suggests that the Commis-

sion contemplated that a sentence of 262–327 months would be reserved for a class of offenders who played a substantial role in the distribution of narcotics. This was not the role of Marvin Williams.

In each of his prior convictions Williams was a street seller of narcotics—the lowest level on the distribution chain. Not only did this make him the least significant member of the distribution chain, but it made him the person most likely to be arrested and convicted since he was out on the street where he could easily be observed and approached by the police. For this reason, his record of convictions should be considered less significant for sentencing purposes than that of others in the distribution chain who do not expose themselves so readily to the risk of arrest and conviction. To equate two or three convictions for street level sales of narcotics with two prior convictions for distributing wholesale quantities of narcotics would seriously over-represent the seriousness of the street seller's criminal history.

It is also important to recognize that the street seller is the person in the distribution chain who can be most easily replaced by those who operate the distribution network. Unfortunately, there are a large number of addicts and others who are immediately available to replace the street seller who is carted off to jail. This is not to say that street sellers should not be punished, but it does suggest that street sellers were not the type of offender who the Sentencing Commission pictured within the heartland of a 262–327 month guideline.

To say that Marvin Williams is not a person whose conduct was contemplated by the guideline at issue is not to suggest that his prior record should not increase his sentence. Although the Court has determined that his case is not within the heartland of cases contemplated by the Commission in adopting the 262–327 month guideline, Congress intended that "substantial prison terms should be imposed on . . . repeat drug traffickers."

S.Rep. No. 98–225, at 175 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3358. Thus, the Court rejects the contention of Williams' counsel that it should simply sentence him on the basis of the guidelines that would apply had his offense level and criminal history not been adjusted because of career offender status.

Having determined that "the sentencing range specified by the career offender guideline ... overstates the seriousness of the defendant's prior offenses," *Rivers*, 50 F.3d at 1130, the Court at the sentencing hearing will hear argument as to how far it should "reduce either the criminal history category or the offense level, or both." *Id.* at 1331.

SO ORDERED.