UNITED STATES of America,
Appellant,

v.

Michael MISHOE, Defendant–Appellee.

Docket No. 00–1243.

United States Court of Appeals,
Second Circuit.

Argued Dec. 6, 2000.

Decided Feb. 23, 2001.

Andrew L. Fish, Asst. U.S. Atty., New York, N.Y., (Mary Jo White, U.S. Atty., James J. Benjamin, Jr., Asst. U.S. Atty., on the brief), for appellant.

Tracy W. Young, Madison, N.J., (Lisa Scolari, New York, N.Y., on the brief), for defendant-appellee.

Before JON O. NEWMAN, CABRANES, and STRAUB, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal of a sentence by the Government presents the issue of whether, under the Sentencing Guidelines, a defendant's criminal history category may be reduced because the prior convictions on which the category was determined involved so-called "street-level" sales of narcotics. The United States appeals from the March 21, 2000, judgment of the United States District Court for the Southern District of New York (Shira A. Scheindlin, District Judge), sentencing Michael Mishoe to 140 months upon his plea of guilty to distributing crack cocaine. Judge Scheindlin reduced Mishoe's criminal history category ("CHC") from VI to V. We conclude that the reduction was erroneously based on the fact that the prior convictions involved "street-level" sales of narcotics, but that a reduction would be permissible if the sentencing judge determines, in the exercise of her discretion after individualized consideration of the factors relevant to Mishoe's case, that CHC VI overstates the seriousness of his criminal record. We therefore vacate the sentence and remand for resentencing.

### Facts

Mishoe was arrested after being observed making several drug sales, one of which was to an undercover agent. At the time of his arrest, he had five packets of crack cocaine, containing approximately 300 vials.[1] He was originally indicted with other members of the drug gang that supplied him, and was charged with being in a conspiracy involving 50 or more grams of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), which would have subjected him to a ten-year mandatory minimum sentence. Pursuant to a plea agreement, Mishoe pled guilty to a substituted information charging him with one count of distributing five bags of crack in

---

1. The contents of the vials were never measured, but the Government claimed at sentencing that each vial contained between one- sixth and one-eighth of a gram of crack, or between 37.5 grams and 50.0 grams.

violation of section 841(b)(1)(C), which has no minimum quantity requirement and no mandatory minimum sentence. The plea agreement stipulated a base offense level of 32,[2] an adjusted offense level of 29 (reduced for acceptance of responsibility), placement in CHC VI, and a resulting sentencing range of 151–188 months. The agreement explained that CHC VI was appropriate both because of the number of points attributable to Mishoe's several prior state court convictions, *see* U.S.S.G. § 4A1.1, and because the combination of his current narcotics offense and a record of at least two prior narcotics convictions qualified Mishoe as a career offender, for whom CHC VI is required, *see id.* § 4B1.1.[3] The agreement obligated the parties not to seek either an upward or a downward departure.

■ At sentencing, following Mishoe's guilty plea, Judge Scheindlin began her consideration by accepting the plea agreement's stipulation that Mishoe's adjusted offense level was 29 and his CHC was VI. Using the ordinary (*i.e.*, non-career offender) method of determining a CHC, she first based the applicability of CHC VI on a total of 15 criminal history points, resulting from five prior New York state court convictions. One of those prior offenses, a July 28, 1998, conviction for fare-beating for which Mishoe received a five-day sentence, should not have merited one point because, as we ruled the day after Mishoe's sentencing, *see United States v. Sanders*, 205 F.3d 549, 553–54 (2d Cir.2000), fare-beating is similar to the minor offenses that the Sentencing Commission has excluded from CHC point calculations. *See* U.S.S.G. § 4A1.2(c). Nevertheless, even with a proper point total of 14, Mishoe remained in CHC VI, which covers point totals of 13 or more. *See id.* Sentencing Table.

Of the 14 points, Mishoe merited 11 because of the following four New York state court sentences:

(1) a 1989 sentence of two to four years for Attempted Criminal Possession of a Controlled Substance in the Fifth Degree, a Class E Felony;

(2) a 1992 sentence of four months for Criminal Possession of a Controlled Substance in the Seventh Degree, a Class A Misdemeanor;

(3) a 1994 sentence of 18 months to three years for Attempted Criminal Possession of a Controlled Substance in the Fifth Degree, a Class E felony; and

(4) a 1996 sentence of thirty months to five years for Criminal Sale of a Controlled Substance in the Fifth Degree, a Class D Felony.

Each of the three felony sentences merited three points, *see id.* § 4A1.1(a) (sentences exceeding 13 months), and the misdemeanor sentence merited two points, *see id.* § 4A1.1(b) (sentence between 60 days and 13 months). In addition, Mishoe merited two points because the instant federal offense was committed while he was on parole from the 1996 sentence, *see id.* § 4A1.1(d), and one point because the instant federal offense was committed within two years of his release from the 1996 sentence, *see id.* § 4A1.1(e).[4]

2. The drug quantity table of the Sentencing Guidelines prescribes level 32 for quantities of cocaine base (crack) that are at least 50 grams but less than 150 grams. *See* U.S.S.G. § 2D1.1(c)(4). The plea agreement specified a base offense level of 32, but, in an apparent typographical error, cited section 2D1.1(c)(3), which specifies a base offense level of 34. During the sentencing hearing, the Government alleged, and Mishoe ultimately accepted, that the quantity on which his base offense level was calculated was at least 50 grams.

3. Career offender status had no effect on Mishoe's base offense level because the level under the career offender guideline for a defendant facing a maximum sentence of twenty years is 32, *see* U.S.S.G. § 4B1.1(C), which was Mishoe's base offense level calculated solely on the quantity of drugs for which he was responsible, *see id.* § 2D1.1(c)(4).

4. The plea agreement had contemplated two additional points for a Jan. 5, 1988, conviction for Attempted Criminal Sale of a Controlled Substance in the Third Degree, a Class C felony, for which Mishoe was sentenced to

Judge Scheindlin also noted that, irrespective of Mishoe's CHC point total, he was appropriately placed in CHC VI because he is a "career offender" within the meaning of the Guidelines. *See id.* § 4B1.1. That designation resulted from a combination of his age (39), his current felony narcotics offense, and his record of at least two prior felony narcotics convictions. *See id.*

In imposing sentence, Judge Scheindlin, *sua sponte*, made what has been called a "horizontal departure," *see, e.g., United States v. Rivers*, 50 F.3d 1126, 1130 (2d Cir.1995), moving horizontally across the Guidelines' Sentencing Table from CHC VI to CHC V, because she concluded that CHC VI overrepresented the seriousness of his criminal record, a ground for departure recognized by U.S.S.G. § 4A1.3. She explained that she was following *United States v. Williams*, 78 F.Supp.2d 189 (S.D.N.Y.1999), in which Judge John S. Martin, Jr. had ruled that a horizontal departure from CHC VI is appropriate for defendants whose prior sentences were imposed for street-level drug selling. *See id.* at 193.

In expressing this view, Judge Scheindlin considered Mishoe, like the defendant in *Williams*, to be:

"a street seller of narcotics—the lowest level on the distribution chain. Not only did this make him the least significant member of the distribution chain, but it made him the person most likely to be arrested and convicted since he was out on the street where he could be easily observed and approached by the police. For this reason, his record of convictions should be considered less significant for sentencing purposes than that of others in the distribution chain who do not

expose themselves so readily to the risk of arrest and conviction. To equate two or three convictions for street level sales of narcotics with two prior convictions for distributing wholesale quantities of narcotics would seriously overrepresent the seriousness of the street seller's criminal history."

Sentencing transcript at 33–34 (Mar. 8, 2000) (quoting *Williams*, 78 F.Supp.2d at 193) (interpolations omitted).

Commenting on her selection of CHC V, Judge Scheindlin stated:

I don't want the government to think or the record to reflect that I don't think that's a very serious criminal history. It is. Criminal history category V is the second highest category. It leads to a very severe sentence. I am only departing by one category, only departing from what has been titled the career offender statute.

The departure to CHC V at offense level 29 correlated to a sentencing range of 140–175 months. Judge Scheindlin sentenced Mishoe to 140 months. After imposing sentence, she added:

I have to give what I consider a very lengthy sentence. I know the government is not convinced. 140 months to me is a lifetime..... Anybody who is sitting in this court room who thinks 140 months is a light sentence is seriously confused and ought to discuss this with somebody.

## Discussion

The Sentencing Commission has made the extent of a defendant's prior criminal record an explicit determinant of a defendant's applicable sentencing range in order to promote the statutory purposes of the

six months' imprisonment. However, the Guidelines exclude from the CHC point total a sentence of less than 13 months imposed

more than ten years before the commencement of the instant offense. *See* U.S.S.G. § 4A1.2(e).

Sentencing Reform Act of 1984, especially the need "to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C). *See* U.S.S.G. Ch. 4, Pt. A, intro. comment. Toward this end, the Sentencing Table establishes six categories of criminal history, *see id.* Sentencing Table, keyed primarily to the number and length of a defendant's prior sentences. *See id.* Ch. 4, Pt. A. The six CHCs specify, for each offense level of the Sentencing Table, increasing ranges of punishments. For example, at Mishoe's adjusted offense level of 29, the punishment ranges are: CHC I, 87–108 months; CHC II, 97–121 months; CHC III, 108–135 months; CHC IV, 121–151 months; CHC V, 140–175 months; and CHC VI, 151–188 months.

The Sentencing Commission recognized that in some cases the numerical formula by which points for prior sentences of different severity determine the applicable CHC might result in a sentencing range that was either too lenient or too severe. "There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit future crimes." *Id.* § 4A1.3. In that event, a court may "consider a downward departure from the guidelines."[5] *Id.*

In Mishoe's case, the District Court concluded that CHC VI overrepresented the seriousness of his criminal history because all of his four prior offenses (as well as the instant offense) were for street-level sales of narcotics. We understand Judge Scheindlin, like Judge Martin in *Williams,* to have adopted a special rule for CHC determinations whereby prior offenses involving street-level sales of narcotics generally (perhaps always) permit a horizontal departure from CHC VI, whether that category resulted from a defendant's criminal history point total or his career offender

status. The Government contends that use of such a general rule is error, and for several reasons we agree.

■ First, departures are to be made on the basis of individualized consideration of the circumstances of a defendant's case, rather than a general "rule." For example, in considering a (vertical) departure because of the victim's misconduct, the Supreme Court observed that

> it does not advance the analysis much to determine that a victim's misconduct might justify a departure in some aggravated assault cases. What the district court must determine is whether the misconduct that occurred *in the particular instance* suffices to make the case atypical.

*Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (emphasis added). *Koon* also appears to instruct that the usual standard required for departures, *i.e.,* whether the departure is based on "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission," 18 U.S.C. § 3553(b), applies to horizontal CHC departures authorized by section 4A1.3. In rejecting a sentencing judge's attempt to depart below the sentencing range prescribed for CHC I on the theory that the Commission had not adequately distinguished among defendants in CHC I, the Supreme Court noted that the Commission had adequately considered and foreclosed departures below the range prescribed for CHC I. *See Koon,* 518 U.S. at 111, 116 S.Ct. 2035 (citing U.S.S.G. § 4A1.3, ¶ 5). Our Court has also indicated that horizontal CHC departures require particularized consideration of the circumstances of a defendant's case. *See United States v. Rivers,* 50 F.3d 1126, 1130–31 (2d Cir.1995) (approving horizontal departure from CHC VI initially determined because of defendant's career offender status); *see also*

---

**5.** The departure is horizontal along the CHC axis of the Sentencing Table but downward

from the sentencing range normally applicable.

*United States v. Shoupe*, 35 F.3d 835, 837–39 (3d Cir.1994); *United States v. Bowser*, 941 F.2d 1019, 1022–26 (10th Cir.1991); *United States v. Senior*, 935 F.2d 149, 151 (8th Cir.1991).

■ Second, as the Government contends, a general rule reflected in a "street-level" narcotics sale exception to CHC determinations would be inconsistent with Congress's approach to sentencing of career offenders. Congress directed the Sentencing Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories ·of defendants" who meet the career offender criteria, which include two or more prior convictions for either a crime of violence or a violation of 21 U.S.C. § 841. *See* 28 U.S.C. § 994(h). The blanket inclusion of prior convictions for section 841 narcotics violations precludes an exception for offenses involving street-level selling.[6]

Third, the Commission's career offender guideline, following the Congressional mandate, includes the criterion of two prior felony narcotics convictions, *see* U.S.S.G. 4B1.1, leaving no room for a generalized exception for "street-level" drug selling.

Finally, pertinent case law stands opposed to a "street-level" exception. Our Court has rejected a horizontal departure from a CHC VI career offender designation based solely on the small amount of narcotics involved in the offense of conviction. *See United States v. Tejeda*, 146 F.3d 84, 87 (2d Cir.1998); *United States v. Richardson*, 923 F.2d 13, 16 (2d Cir.1991) ("The legislative history to the Guidelines and the language of the career offender proviso do not differentiate among types of dealers and do not in any way advocate treating street dealing career offenders differently from other career offenders."); *see also United States v. Hays*, 899 F.2d 515, 518–20 (6th Cir.1990). Two other circuits have rejected horizontal departures from CHC VI designations based solely on the small amounts of narcotics involved in the defendant's prior offenses. *See United States v. Perez*, 160 F.3d 87, 88–89 (1st Cir.1998) (in banc); *United States v. Brown*, 23 F.3d 839, 841 (4th Cir.1994).

■ Nevertheless, although the District Court erred in applying a generalized "street-level" drug selling exception to CHC VI designations (whether based on criminal history points or career offender status), we believe that the Court would be entitled on remand to consider whether to make a departure based on an individualized consideration of factors relevant to an assessment of whether CHC VI "significantly over-represents the seriousness of [the] defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3. Such factors might include, for example, the amount of drugs involved in Mishoe's prior offenses, his role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in CHC VI. *See United States v. Perez*, 160 F.3d 87, 89 & n. 4 (1st Cir. in banc) (plurality opinion) ("smallness in combination with other factors can provide" a basis for a departure; " 'smallness' " refers to instances in which "the amounts of drugs involved and the defendant's role in the offense are minimal").

Since a comparison of the time served for prior offenses with the time to be served by placement in CHC VI is not

---

**6.** The Government rather extravagantly embellishes its statutory argument by suggesting that "Congress' career offender mandate seemingly targeted small-scale narcotics felons such as Mishoe even *more* than 'major movers' of narcotics." Brief for Appellant at 20 (emphasis in original). This unlikely inference is said to be derived from the fact that large-scale narcotics distributors frequently receive lengthy prison terms and therefore have less opportunity than street-level dealers like Mishoe to leave prison in time to commit two additional narcotics felonies. Suffice it to say we do not regard this as among the Government's strong arguments.

obviously a factor that may be considered, in combination with other factors, in making the individualized assessment called for by section 4A1.3, some elaboration is warranted. The Commission has explained that the escalating sentence ranges prescribed by the CHCs are intended to achieve the purpose of deterrence, *see* U.S.S.G. Ch 4, Pt. A, intro. comment. The Commission has also recognized that a horizontal departure may be made where a defendant's CHC overrepresents "the likelihood that the defendant will commit further crimes." *Id.* § 4A1.3. Although the Commission has specified that prior narcotics offenses *count* for purposes of career offender status "regardless of the actual sentence imposed," U.S.S.G. § 4B1.2, comment. (n.1), the fact that prior small sentences cannot be disregarded and cannot justify routine horizontal departures for all street-sellers does not mean that the relationship between a particular defendant's CHC VI sentencing range and the time he served on his prior sentences, in combination with other factors (all assessed on an individualized basis), might not warrant a departure.

■ Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. If, for example, a defendant twice served five or six years and thereafter committed another serious offense, a current sentence might not have an adequate deterrent effect unless it was substantial, perhaps fifteen or twenty years. Conversely, if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect. We think the Commission's sensible recognition that a CHC may overrepresent a defendant's likelihood of recidivism permits a sentencing court, in appropriate cases, to include in its individualized consideration of a section 4A1.3 departure the relationship between the punishment prescribed by a career offender CHC and the degree of punishment imposed for prior offenses. In some circumstances, a large disparity in that relationship might indicate that the career offender sentence provides a deterrent effect so in excess of what is required in light of the prior sentences and especially the time served on those sentences as to constitute a mitigating circumstance present "to a degree" not adequately considered by the Commission. *See* 18 U.S.C. § 3553(b).

The Government argued at sentencing and again on appeal that, had it not permitted Mishoe to plead to a section 841(b)(1)(C) count, his current narcotics offense, coupled with just two of his prior narcotics felonies, would have exposed him to a mandatory life sentence without parole. *See* 21 U.S.C. § 841(b)(1)(A). The point is made for two purposes. First, the Government contends that the sentencing range of 151 to 188 months prescribed for a defendant at offense level 29 and CHC VI cannot be considered unduly harsh in view of the far more serious penalty that Congress has made available for a person in Mishoe's circumstances. Second, the Government implicitly warns (but refrains from expressly threatening) that if sentencing judges are permitted to reduce a CHC VI category for a defendant in Mishoe's circumstances, the Government might counter such leniency by charging the offense that carries the mandatory life sentence. Neither aspect of the argument persuades us.

Although Congress has made a mandatory life sentence *available* for any seller of 50 or more grams of crack who has two prior felony narcotics convictions, it has done so in contemplation of both a criminal justice system that appropriately accords substantial discretion to prosecutors in determining what charges to initiate and

what plea agreements to accept, and the limited discretion of sentencing judges to ameliorate unduly harsh punishments. The maximum available statutory punishment will often not be the just punishment; the sentencing range normally prescribed by the Sentencing Table will sometimes not be the just punishment.

Although we are persuaded that neither Congress nor the Commission would regard street-level narcotics selling as a circumstance indicating that a sentence prescribed for a defendant in CHC VI was for that reason too severe, we do not believe that the available maximum penalty indicates a Congressional or Commission view that, in some cases, individualized consideration of all the relevant factors might not warrant the exercise of a sentencing judge's discretion to conclude that a slightly reduced sentence would be sufficient to achieve the necessary deterrent effect.

■ As for the implicit second aspect of the Government's argument, we think it misperceives the distinct roles of the Judicial Branch and the prosecuting arm of the Executive Branch. Our task is to apply the law in a fair and effective manner, implementing statutory and administrative requirements, and recognizing the discretion that may appropriately be exercised pursuant to those requirements. Prosecutors must use their sound judgment in making charging decisions and accepting plea agreements. We are entitled to assume that the standards of professionalism guiding the prosecutors in this Circuit will assure that they will make those decisions on the merits of each case, with no thought of retaliating to counter a court decision that they opposed. Indeed, a core aspect of the judicial function would be severely compromised if we were to decline to make a decision we believed was in accordance with law simply because of our apprehension that some prosecutors would decline to discharge their responsibilities in a fair-minded manner.

Conclusion

Because the basis for the District Court's horizontal departure was erroneous, but a horizontal departure was not prohibited in the exercise of the particularized inquiry outlined in this opinion, we vacate the sentence and remand the case to the District Court for further consideration.