**UNITED STATES of America, Appellee,**

v.

**Nicola DeRIGGI, Defendant–Appellant.**

**No. 485, Docket 95–1237.**

United States Court of Appeals, Second Circuit.

Argued Nov. 29, 1995.

Decided Dec. 8, 1995.

See also, 45 F.3d 713.

Gordon Mehler, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, and David C. James, Assistant United States Attorney, Brooklyn, NY, on the brief) for Appellee.

Myles H. Malman, Whisenand & Turner, Miami, FL, for Defendant–Appellant.

Before: ALTIMARI, JACOBS and CABRANES, Circuit Judges.

PER CURIAM:

The facts of this case are set out in detail in prior opinions of this court, *United States v. DeRiggi,* 45 F.3d 713, 715–16 (2d Cir.1995) (*"DeRiggi I "*), and the District Court for the Eastern District of New York (Weinstein, J.). *United States v. Abbadessa,* 848 F.Supp. 369, 376–78 (E.D.N.Y.1994). In summary, defendant Nicola DeRiggi was the supervising in-

spector of the Taxi and Limousine Commission's inspection station in Woodside, Queens, New York. Corruption was rampant at the facility. Bribes were paid to line inspectors and their supervisors to rig inspection outcomes and to ignore inspection failures.

DeRiggi was convicted of conspiracy to violate the Hobbs Act, 18 U.S.C. § 1951. In March and April 1994, the district court sentenced DeRiggi and 29 of his coconspirators. In its opinion explaining the sentences, the court announced that it was not bound by the Sentencing Guidelines. *Abbadessa*, 848 F.Supp. at 380–81. The court sentenced DeRiggi to 36 months in prison, two years of supervised release, a restitution payment of $10,000, a fine of $7,500, and a special assessment of $50. *Id.* at 384.

The Government appealed the sentences of four of the defendants (DeRiggi not among them), arguing that the court erred by not sentencing them under the Guidelines. In *DeRiggi I*, we reversed the district court's ruling, vacated the sentences of the four defendants, and remanded for new sentencing. The Government and DeRiggi then agreed that he too should be resentenced. In *United States v. Deriggi*, 54 F.3d 765 (2d Cir.1995) ("*Deriggi II*") (unpublished summary order), we vacated DeRiggi's sentence and remanded for resentencing.

The district court resentenced DeRiggi on April 19, 1995 to the same sentence originally imposed. The court stated that the applicable offense level for DeRiggi was 19, that his sentencing range was 30 to 37 months, and that a 36–month prison sentence was therefore consistent with the Guidelines. DeRiggi's offense level was calculated as follows: a base offense level of ten for his crime, a two-level enhancement because he accepted more than one bribe, an eight-level enhancement because of the bribe amounts, a four-level enhancement for his role as an organizer or leader of the conspiracy under § 3B1.1(a) of the Guidelines, a three-level decrease for acceptance of responsibility, and a two-level decrease for cooperating with the government. On appeal, DeRiggi challenges only the four-level enhancement based on his role as an organizer or leader of the conspiracy.

The district court's assessment of this four-level enhancement was not clearly erroneous, and we therefore affirm. *See United States v. Gomez*, 31 F.3d 28, 31 (2d Cir.1994). At the resentencing hearing, the Government made a proffer concerning DeRiggi's role in the conspiracy. DeRiggi declined the opportunity to present facts in opposition to the Government's proffer, and waived a *Fatico* hearing. DeRiggi moved to strike the four-level enhancement, suggesting that a three-level or two-level enhancement under § 3B1.1(b) or (c) was more appropriate. The court denied the motion, explaining that "it's absolutely clear that this defendant under the guidelines must be considered as a chief organizer of a criminal activity." The evidence supported this ruling.

While DeRiggi may not have been the scheme's inventor or originator, he was clearly one of its leaders. The district court emphasized that DeRiggi was the highest ranking authority at the inspection station, and exercised control over it. Regardless of DeRiggi's exact role in the conspiracy, his place in the inspection station hierarchy together with his participation in the conspiracy necessarily made him a leader in the scheme. The district court recognized that a corrupt executive who is seen to be corrupt by subordinates leads by example. DeRiggi's participation in the scheme allowed his subordinates to understand that bribe-taking was an institutional practice, and that they had high-ranking institutional protection for their jobs and careers notwithstanding their corruption. DeRiggi's influence would tend in this way to erode the inhibitions and scruples of participating subordinates and to facilitate recruitment of others.

DeRiggi points to Judge Weinstein's on-the-record observation—after sentencing—that DeRiggi deserved his sentence in part because he had the power to "blow the whistle" on the corruption, and that more lofty city officials deserved similar treatment. Without subscribing to these comments, we do not read them as evidencing some kind of impermissible motive. DeRiggi's ability to "blow the whistle" is an aspect of his status as a leader, which we conclude is a supportable basis for the enhancement. It is self-

evident that, by choosing to actively participate in the scheme rather than put a stop to it, DeRiggi put an imprimatur on this pervasive corruption.

DeRiggi was an organizer and leader in a second sense as well. By virtue of his position in the hierarchy, he was responsible for assigning inspectors to specific lanes, and he took care to assign the corrupt inspectors to work together in the same lanes. As a result, honest inspectors could not interfere with the bribery or inhibit it by their presence. DeRiggi therefore played an integral role in organizing the crime.

We have held that when a business's top officer knows of corruption in the business and implicitly approves it by participating in the corruption, a four-level enhancement under § 3B1.1(a) is proper. *United States v. Duncan,* 42 F.3d 97, 106 (2d Cir.1994). *See also* § 3B1.1, Application Note 4 (in deciding whether defendant is organizer/leader or merely manager/supervisor, one of factors court should consider is "the degree of control and authority exercised over others"). DeRiggi's conduct satisfies this standard. The district court's four-level enhancement was not clearly erroneous.

■ We may quickly reject DeRiggi's other arguments that the enhancement was improper. First, DeRiggi argues that the district court's application of the Guidelines was a "charade," a mere use of Guidelines language to cloak an unjustified sentence, and that this abuse violated the terms of our remand. Our mandates in *DeRiggi I* and *Deriggi II,* however, did not require any particular findings or conclusions under the Guidelines, or any particular outcome. In one sense, the district court's use of the Guidelines to impose the same sentence can be read to reconfirm our decision in *DeRiggi I* that the Guidelines are binding, and to refute the district court's original conclusion that the Guidelines are "of marginal utility," *Abbadessa,* 848 F.Supp. at 380, in discovering the appropriate sentence for DeRiggi. In short, there is no basis for finding that the Guidelines analysis employed here was perfunctory or pretextual, or that our mandate was disregarded. DeRiggi also argues that the district court failed to make specific fac-

tual findings that he was an organizer or leader of the scheme, as required by *United States v. Stevens,* 985 F.2d 1175, 1184 (2d Cir.1993). The court did make these findings, both when DeRiggi was sentenced originally, *Abbadessa,* 848 F.Supp. at 377, 382–84, and at his resentencing hearing.

Finally, we note that, even if the assessment of the § 3B1.1 enhancement had been in error, the error would probably have been harmless. Application Note 2 to § 3B1.1 states that a defendant who does not lead, organize, supervise, or manage criminal activity may still receive an upward departure if he "exercised management responsibility over the property, assets, or activities of a criminal organization." Even without the § 3B1.1 enhancement, therefore, the district court would have had the power to depart upward in this case.

The judgment of the district court is affirmed.