**UNITED STATES of America,**
**Appellee,**

v.

**J. Kevin MENEILLY and David Rodriguez, Defendants–Appellants.**

**No. 00–1631L–1640.**

United States Court of Appeals, Second Circuit.

Oct. 31, 2001.

Joseph W. Ryan, Jr., Uniondale, NY, for appellant Meneilly.

Steven R. Kartagener, N.Y., NY, for appellant Rodriguez.

Ruth Nordenbrook, Ass't U.S. Att'y, EDNY, Brooklyn, NY, for appellee.

Present KEARSE, MINER, and Honorable PARKER, Circuit Judges.

## SUMMARY ORDER

These causes came on to be heard on the record from the United States District Court for the Eastern District of New York, and were argued by counsel.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgments of said District Court be and they hereby are affirmed.

Defendants J. Kevin Meneilly and David Rodriguez appeal from judgments of conviction entered in the United States District Court for the Eastern District of New York following a jury trial before Denis R. Hurley, *Judge*, convicting them of conspiring to defraud the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 371, and tax perjury, in violation of 26 U.S.C. §§ 7206(1) and/or 7206(2). Meneilly was convicted on two such conspiracy counts ((a) off-the-books payments by Meneilly's security company Security Personnel Services, Inc. ("SPSI"), of wages and other compensation, and (b) fraudulent treatment of payments from SPSI clients); two counts of filing false personal income tax returns, in violation of § 7206(1), and one count of filing a false corporate income tax return for SPSI, in violation of § 7206(2). Meneilly was sentenced principally to 57 months' imprisonment, to be followed by a three-year term of supervised release. Rodriguez was convicted on one conspiracy count (the SPSI off-the-books-payments scheme) and on one count of filing a false personal income tax return, in violation of § 7206(1); he was sentenced principally to 50 months' imprisonment, to be followed by a three-year term of supervised release. On appeal, Meneilly contends principally (1) that the trial court erred in failing to instruct the jury on his defense theories; (2) that the court erred in failing to respond to a question from the jury; (3) that two of the tax perjury counts on which he was convicted should be dismissed for failure to charge a crime; and (4) that the evidence was insufficient to support his conviction on any count. Rodriguez joins the second of these contentions and contends that the evidence was insufficient to support his conviction for conspiracy. Defendants also challenge their sentences. Both contend that the district court applied a version of the Sentencing Guidelines ("Guidelines") that violated their rights under the *Ex Post Facto* Clause of the Constitution. Meneilly contends in addition, *inter alia*, that the court erred in attributing to him a leadership role in the off-the-books-payments conspiracy, and that his sentence is unconstitutional under *Apprendi v. New Jersey*, 530

U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). For the reasons that follow, we find no basis for reversal.

*The Trial*

■■■ Meneilly contends that he is entitled to a new trial because the district court failed to instruct the jury (1) that he should be acquitted if he could have believed there was no requirement to report income received by him or SPSI that was diverted to L.M. Management Services ("LMM"), a shell company he was alleged to have established in order to facilitate the conspiracy's off-the-books-payments scheme, and (2) that it must acquit him if it found that he relied in good faith on the advice of his accountant Edward Kelly with respect to the preparation of his and SPSI's tax returns. We disagree. A defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence. *See, e.g., United States v. Prawl*, 168 F.3d 622, 626 (2d Cir.1999); *United States v. Johnson*, 994 F.2d 980, 988 (2d Cir.), *cert. denied*, 510 U.S. 959, 114 S.Ct. 418, 126 L.Ed.2d 364 (1993). But he is "not necessarily entitled to have the exact language of the charge [he] submitted to the district court read to the jury. . . . Rather, a charge is sufficient if it adequately appr[ ]ises the jury of the crime and the defense." *Id.* (internal quotation marks omitted); *see, e.g., United States v. Evangelista*, 122 F.3d 112, 116 (2d Cir.1997), *cert. denied*, 522 U.S. 1114, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998). In order to prevail on a contention that the trial court erred in refusing to give requested instructions, the defendant must establish that his own proposed language " 'accurately represented the law in every respect,' " and that the charge actually given, viewed as a whole, prejudiced him. *United States v. Dove*, 916 F.2d 41, 45 (2d Cir.1990) (quoting *United States v. Ouimette*, 798 F.2d 47, 49 (2d Cir.1986),

*cert. denied*, 488 U.S. 863, 109 S.Ct. 163, 102 L.Ed.2d 134 (1988)). The instructions proposed by Meneilly run aground on these principles.

Meneilly asked the court to instruct the jury, *inter alia*, that it "must acquit" him if it found "that LMM received deposits into its bank account." The court correctly noted, however, that Meneilly's defense was that Meneilly believed the moneys in question were going to be declared on LMM's return and hence need not be declared on his, not simply that LMM received the moneys. Further, the instruction proposed by Meneilly was not an accurate statement of the law, given that the jury could find him guilty of conspiring to defraud the IRS by diverting moneys to LMM's account in order to conceal from the IRS the receipt of taxable income by SPSI and by individuals who were given off-the-books payments.

■■■ Nor did the court err in refusing to give the instruction proposed by Meneilly that the jury should acquit him if it found he had acted in reliance on the advice of his accountant. The proposed instructions contained factual statements that were unsupported by, and indeed contradicted by, the evidence. There was evidence that SPSI had been making off-the-books payments to some employees since 1974, well before Kelly became Meneilly's accountant. Further, there was no evidence to show that Meneilly solicited or received from Kelly advice as to the existence or nonexistence of a requirement to report moneys that he received or that were spent for his personal benefit. Meneilly himself did not testify; and Kelly testified that he simply used the data that Meneilly gave him and did not discuss with Meneilly what information Meneilly should provide.

■■■ Meneilly and Rodriguez also contend that they are entitled to a new trial on the ground that the district court failed

to respond to a question from the jury, during deliberations, relating to the intent element of the alleged offenses. The jury asked whether "the intent to impede [is] a requirement." Defendants urged that the question be answered "yes"; the government argued that the proper answer was "no." The court told the jury that its question could not be answered with a simple "yes" or "no" statement, a response that was technically accurate. The indictment alleged that defendants engaged in conspiracies "to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the [IRS] in the ascertainment, computation, assessment, and collection of the income taxes" of certain persons. An indictment charging a conspiracy to achieve two or more unlawful goals, in the conjunctive, can properly be supported by proof of any of the alleged goals. *See Griffin v. United States*, 502 U.S. 46, 56–57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *United States v. Thomas*, 54 F.3d 73, 81 (2d Cir.1995); *cf. United States v. Schiff*, 801 F.2d 108, 114 (2d Cir.1986) (with respect to alleged violations of substantive statutes worded in the disjunctive, instructions may be phrased in the disjunctive even if indictment is phrased in the conjunctive), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987). Thus, although the court's response to the jury's inquiry whether "the intent to impede [is] a requirement" may have appeared cryptic to the jury, it was accurate because the answer depended on whether the jury could or would find instead that defendants intended, as alleged in the indictment, to impair, obstruct, or defeat the lawful functions of the IRS. If the jury could not make one of those three findings, it would need to find intent to impede in order to convict; if the jury found an intent to impair, obstruct, or defeat, it would not need to find intent to impede. We think it would have been preferable for the court to give this explanation of why it could not answer the jury's question with a simple "yes" or "no"; however, the court did not simply refuse to answer the question. Rather, the court stated, "As that's framed, in other words, as you framed the question, the question cannot be answered yes or no. I don't think that's much help to you, but that's about the best we can do with it because I don't want to speculate as to what you're thinking about and try to answer what I think you may be thinking about." (Trial Transcript at 1774.) The court invited the jury, if it remained puzzled upon the resumption of its deliberations, to "try to articulate as best you can or write as best you can the core problem that you're having, send us another note and we will work on that as well." (*Id.* at 1774–75.) We see no support for defendants' contention that the court in essence told the jury that no finding of intent to defraud the government was required, and we cannot conclude that the court's handling of the jury's question provides a basis for reversal.

■ Nor is there merit in defendants' challenges to the sufficiency of the evidence to support their convictions. In making such a challenge, a defendant bears a heavy burden. *See, e.g., United States v. Esdaille*, 769 F.2d 104, 108 (2d Cir.), *cert. denied*, 474 U.S. 923, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985); *United States v. Martino*, 759 F.2d 998, 1002 (2d Cir. 1985); *United States v. Losada*, 674 F.2d 167, 173 (2d Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). In reviewing such a challenge, we must credit every inference that could have been drawn in the government's favor, *see, e.g., United States v. Carson*, 702 F.2d 351, 361 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983), and we must affirm the conviction so long as, from the inferences reasonably

drawn, the jury might fairly have concluded guilt beyond a reasonable doubt, *see, e.g., United States v. Buck,* 804 F.2d 239, 242 (2d Cir.1986); *United States v. Taylor,* 464 F.2d 240, 244–45 (2d Cir.1972). We defer "to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Morrison,* 153 F.3d 34, 49 (2d Cir.1998). Defendants in this case have not met their burden. The district court, in an opinion reported at 78 F.Supp.2d 95 (1999), properly applied these principles in denying defendants' motions for acquittal, which challenged the sufficiency of the government's evidence against them, and we see no basis for reaching a contrary conclusion. Accordingly, we reject defendants' sufficiency challenges substantially for the reasons stated in that opinion.

For the reasons stated in that opinion, we also reject Meneilly's contention that two of the perjury counts against him failed adequately to charge him with crimes.

*The Sentences*

■ The district court found that the tax loss caused by Meneilly was between $2,500,000 and $5,000,000, and that the tax loss caused by Rodriguez was between $950,000 and $1,500,000. Using the tax loss table set out in § 2T4.1(L) of the version of the Guidelines that became effective on November 1, 1993, the court concluded that Meneilly's base offense level was 21 and that Rodriguez's base offense level was 19. Defendants note that the immediately preceding version of the Guidelines set lower offense levels for losses of those magnitudes; and, arguing that the last overt act alleged in the indictment occurred on October 22, 1993, defendants contend that application of the November 1993 version to them violated their rights under the *Ex Post Facto* Clause. We disagree.

■ Where a conspiracy began while one version of the Guidelines was in effect and ended after another version became effective, application of the later version to the coconspirators does not violate the *Ex Post Facto* Clause. *See generally United States v. Eisen,* 974 F.2d 246, 267–68 (2d Cir.1992), *cert. denied,* 507 U.S. 1029, 113 S.Ct. 1840, 123 L.Ed.2d 467 (1993); *United States v. Story,* 891 F.2d 988, 993–96 (2d Cir.1989). Further, once it has been established that there existed a conspiracy of which the defendant was a member, his membership is presumed to continue unless and until the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw. *See, e.g., Hyde v. United States,* 225 U.S. 347, 369–70, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); *United States v. Panebianco,* 543 F.2d 447, 453 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). Here, the indictment alleged that the off-the-books-payments conspiracy lasted through 1993, and there was no evidence in the record to suggest that the conspiracies were terminated before November 1, 1993, or that either Meneilly or Rodriguez withdrew from the conspiracy or conspiracies of which he was a member. To the contrary, there was testimony that money Meneilly diverted to the LMM bank account in 1993 in furtherance of the off-the-books-payments scheme was not reported on SPSI's 1993 tax return; that return was not filed until 1994. Thus, the off-the-books-payments conspiracy plainly continued past the November 1, 1993 effective date of the version of the Guidelines that was applied to defendants. Accordingly, there was no *Ex Post Facto* Clause violation.

■ Nor do we find merit in Meneilly's contentions that the district court

erred in its calculations of his offense level. In reviewing the sentencing court's application of the Guidelines, the appellate court must "accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1994). We will not overturn the court's application of the Guidelines to the facts before it unless we conclude that there has been an abuse of discretion. *See, e.g., United States v. Adelman,* 168 F.3d 84, 86 (2d Cir.1999); *United States v. Parker,* 903 F.2d 91, 103 (2d Cir.), *cert. denied,* 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990). The Guidelines require a four-step upward adjustment in offense level if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Guidelines § 3B1.1(a). "Whether a defendant is considered a leader depends upon the degree of discretion exercised by him, the nature and degree of his participation in planning or organizing the offense, and the degree of control and authority exercised over the other members of the conspiracy." *United States v. Beaulieau,* 959 F.2d 375, 379–80 (2d Cir.1992). Where the defendant was a top corporate official and participated in criminal conduct rather than stopping it, an enhancement for leadership role is especially appropriate. *See, e.g., United States v. DeRiggi,* 72 F.3d 7, 8–9 (2d Cir.1995) (per curiam). District courts "should be given 'latitude' concerning their supervisory role findings." *United States v. Napoli,* 179 F.3d 1, 14 (2d Cir.1999), *cert. denied,* 528 U.S. 1162, 120 S.Ct. 1176, 145 L.Ed.2d 1084 (2000).

 Although Meneilly contends that the court erred in finding him a leader, we disagree. Meneilly was the sole owner and president of SPSI; he, *inter alia,* approved and helped in the maintenance of the LMM bank account that was used as a repository for funds diverted from SPSI's accounts in the off-the-books-payments scheme; and he reviewed SPSI's accounts. We see no abuse of discretion in the court's application of the leadership-role adjustment to Meneilly.

 Finally, we reject Meneilly's contention, invoking *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that his sentence should be vacated because it was calculated on the basis of a tax loss that was not determined beyond a reasonable doubt by a jury. A question of fact that affects a defendant's Guidelines sentencing range only below the statutory maximum (and does not trigger a mandatory minimum) is a question to be decided by the sentencing judge, without need for a jury determination. *See United States v. Garcia,* 240 F.3d 180, 182–83 (2d Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 2615, 150 L.Ed.2d 769 (2001). The sentence imposed on Meneilly was below the statutory maximum. Accordingly, there was no *Apprendi* violation. Although Meneilly also contends that there was an *Apprendi* violation because his Guidelines sentence "could" have exceeded the statutory maximum for his offenses, his premise is fallacious. The Guidelines themselves provide that a sentence must be "not greater than the statutorily authorized maximum sentence." Guidelines § 5G1.1(c)(1); *see id.* § 5G1.1(a) ("Where a statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

We have considered all of defendants' contentions on these appeals and have found in them no basis for reversal. The judgments of conviction are affirmed.